[Civ. No. 4300. Third Appellate District.—November 30, 1931.]

C. O. NORDIN, Respondent, v. FIRST TRUST & SAVINGS BANK OF PASADENA, Appellant.

698

Goudge, Robinson & Hughes and David A. Sondel for Appellant.

R. L. Horton and Holbrook, Taylor, Tarr & Horton for Respondent.

BURROUGHS, J., *pro tem.*—This is an appeal from a judgment in favor of the plaintiff in the sum of $3,596.78, together with interest and costs of suit. ■ Respondent has made a motion to affirm the judgment upon the ground of an insufficient record upon which the appeal can be considered by this court. In their closing brief appellant says: "This case is presented to this court upon the judgment roll." We have before us a copy of the judgment-roll and a copy of the notice of appeal, both certified by the clerk of the trial court as being true and correct copies of the originals. This is sufficient to give this court jurisdiction of the appeal as one based upon the judgment-roll alone, and will be so considered by this court. (*Martin* v. *Pacific Gas & Elec. Co.*, 195 Cal. 544 [234 Pac. 321].) The evidence is not before us, but the material facts as shown by the findings of the court, are substantially as follows:

On June 14, 1926, Marie M. Fritz was the owner, holder and payee of four certain promissory notes, each note being secured by a mortgage. On said date said Marie M. Fritz borrowed a certain sum of money from the Monterey Commercial & Savings Bank, and gave as security two of the notes and mortgages hereinafter referred to as the "Blummer & Conover" notes and mortgages. Each note so delivered was indorsed on the back as follows:

"For value received, I consent to the terms of this note and I guarantee the payment of the same, with all costs of collection, including attorney's fees, and authorize extension of time to maker, and same shall not affect my liability. Demand, notice of nonpayment and protest is waived.

"June 14, 1926.

                                    "MARIE M. FRITZ."

On or about August 20, 1926, said Marie M. Fritz borrowed of Eagle Rock State Bank a certain sum of money, and delivered to it the other two notes hereinafter referred to as the "Wilson & Cammack" notes and mortgages, and she indorsed these notes as follows: "Marie M. Fritz." One I. Klein was president of each of said banks and owned and controlled them. These banks were to all

intents and purposes one-man banks, composed of the said I. Klein. On or about August 20, 1926, said ·I. Klein abstracted and stole from the banks, the four notes and mortgages, and pledged with and delivered. to the First Trust & Savings Bank of Pasadena, the said four notes and mortgages as collateral security for a personal loan to him of $7,000. Prior to the abstracting by Klein of said instruments from the files of said banks, the Eagle Rock State Bank, through its authorized officer, delivered to Klein the said notes and mortgages held as securities by it, being the Wilson & Cammack notes and mortgages, upon payment by Klein of the amount due said bank, and his representation that he was paying said money for and on account of the Monterey Park Commercial & Savings Bank. The said officer of said Eagle Rock State Bank believed said representations of Klein, and acted in good faith. Each one of these two notes had been indorsed—"Marie M. Fritz". The Blummer & Conover mortgages had been altered and the words "I. Klein" substituted for the words "Monterey Park Commercial & Savings Bank", the latter having been erased therefrom, but no change was made in the said notes nor in the indorsements thereon. The action of the First Trust & Savings Bank of Pasadena in making the loan to Klein and accepting the collateral security, was in good faith and without notice of any fraud committed by the said I. Klein. Each one of the four said notes was indorsed as follows:

"Pasadena, Cal., Aug. 28, 1926.

"For value received, I, I. Klein, do hereby transfer and assign to First Trust & Savings Bank of Pasadena, the within note, together with all rights accrued or to accrue under the mortgage securing the same so far as the same relate to this note, as collateral.

"I. Klein."

On October 25, 1926, I. Klein and Rebecca Klein, in consideration of $5,400 did, by bill of sale, sell, transfer and assign to C. O. Nordin, the four notes and mortgages, subject to the $7,000 loan and pledge held by the First Trust & Savings Bank of Pasadena. The principal owing aggregated the sum of $10,500. Other properties were included in this bill of sale. Klein, on the same day, notified the Pasadena bank of the transfer, and the said bank con-

firmed the sale by a writing under the letter-head of the bank dated October 25, 1926, and addressed to I. Klein, in the following words:

"Dear Sir: We understand from your verbal instructions today that you have assigned the following notes and mortgages which we hold as collateral security for your $7000.00 note, to Mr. C. O. Nordin of Los Angeles": (Here follows a description of the notes) "all of which we hold as security for the above mentioned $7000.00 note due 6 months from August 20, 1926. Upon payment of your collateral note, with interest to date of payment, we will turn over the above mentioned notes and mortgages, with assignments, to Mr. C. O. Nordin.

"Yours truly,
"FIRST TRUST & SAVINGS BANK OF PASADENA.
"G. R. McCOMB, Secretary."

The said Nordin demanded and required the above set out letter prior to payment by him for the said notes and mortgages to said Klein. Prior to the purchase of the notes and mortgages, said Nordin made investigation as to the title of Klein, and found by examination of the county records that I. Klein was the owner thereof. Also, prior to the purchase by Nordin on October 26, 1926, Nordin called up the defendant, First Trust & Savings Bank of Pasadena, by telephone, and was informed that Klein was still the owner. Thereafter, on October 30th, said Nordin notified said bank of the sale to him, and inclosed to the bank a document addressed to the bank, and signed by Klein, fully setting out the transfer to Nordin. On November 1st, the bank acknowledged receipt of Nordin's letter, saying: "Certain things have just developed that lead us to believe that this is not a loan which we care to carry, and we are calling upon Mr. Klein to immediately take up his loan, which information we are passing along to you, as you appear to have some interest in the security which we hold." On March 8, 1927, Nordin tendered to the said Bank of Pasadena the full amount of Klein's indebtedness, and demanded delivery of the collateral securities. The bank acknowledged the tender to be in all respects good and sufficient, but refused to accept the same, and to deliver the documents, on the ground that there was a question as to the title and ownership of the same. On April 19, 1927, Marie M. Fritz paid her indebtedness and demanded

from the Eagle Rock State Bank and from the Monterey Park Commercial & Savings Bank the return of the notes and mortgages. Thereafter, the Pacific National Company, on behalf of these two last-named banks, paid to the First Trust & Savings Bank of Pasadena the amount due on the Klein note, and received from said bank the notes and mortgages, which were in turn delivered by the Pacific National Company to Marie M. Fritz. The court further found that plaintiff Nordin had, by reason of defendant's refusal to accept plaintiff's tender, suffered damages in the sum of $3,596.78, being the difference between the value of the securities and the amount due the defendant on the Klein note.

Appellant claims that the trial court erred in concluding that Klein effected a constructive delivery of the negotiable promissory notes; that Nordin was a *bona fide* holder for value in due course, of the said notes; that the notes were negotiable to Nordin by reason of Mrs. Fritz' indorsement. We think that the indorsements made by Marie M. Fritz upon each one and all of said promissory notes were indorsements in blank, and when she delivered them to the banks, they were each one payable to the bearer, and when they were abstracted from the files of the banks by Klein, they were negotiable instruments, payable to bearer. In 19 California Jurisprudence, section 44, page 850, it is said: "It is elementary that when a negotiable instrument is endorsed in blank, it becomes payable to bearer, and may be negotiated by delivery alone so long as the endorsement remains in blank. . . . Where the payee endorses in blank the instrument may be transferred by delivery alone, notwithstanding subsequent endorsements, so long as the endorsement of the payee remains in blank; and this is true whether the payee is the maker or a third person. . . . An endorsement may be in blank notwithstanding words which limit or enlarge the liability of the endorser, such as 'without recourse' or 'demand, notice and protest waived'." It is held in *Eames* v. *Crosier et al.*, 101 Cal. 260 [35 Pac. 873], that the effect of an indorsement in blank is to make the paper payable to the holder, not as an indorsee, but as the bearer. Section 3115 of the Civil Code provides that: "An endorsement in blank specifies no endorsee, and an instrument so endorsed is payable to bearer, and may

be negotiated by delivery.'' It is the holding in *Curtis* v. *Wasem*, 96 Cal. App. 604 [274 Pac. 607], that an indorsement in blank upon the back of a note is a sufficient indorsement without additional words, and is an assignment in writing. It is therefore clear that when Mrs. Fritz deposited these notes with the banks, they were, under the above authorities, negotiable, and Klein, having the actual physical possession of them, they were transferred by delivery. ■ When the First Trust & Savings Bank of Pasadena, the defendant and appellant in this action, received said notes and mortgages as pledges' for the payment of the note of Klein, the latter, as heretofore stated, indorsed them to said bank as a pledge only, and the bank regarded such restrictive indorsement by Klein in that light, and at no time claimed the title to the property. However, the restrictive indorsement and physical possession made further transfer of said notes and mortgages possible only by concerted action of said bank with Klein. Nordin made careful inquiry as to the title; he examined the official records of the county of Los Angeles and found that the title stood in the name of Klein; he was told by the defendant bank that the notes and mortgages were the property of Klein, that the bank would acknowledge the transfer of title to Nordin and deliver the documents upon payment of Klein's note. Under these circumstances the only logical conclusion to be drawn is that they were holding the notes and mortgages for Nordin, subject to their claim of security for the $7,000 note of Klein. That such conduct on the part of the bank constituted a constructive delivery of the security seems to us to be equally plain. Section 3266 of the Civil Code, subdivision ''f'', declares '' 'Delivery' means transfer of possession, actual or constructive, from one person to another.'' This provision was added to our law in 1917, and is a part of the Negotiable Instruments Act.

In 8 C. J. 347, section 525, it is said: ''Actual delivery, however, is not necessary, constructive delivery having been held sufficient.'' In *Purviance* v. *Jones*, 120 Ind. 162 [16 Am. St. Rep. 319, 21 N. E. 1099]. It is held that an actual manual delivery of an instrument is not indispensable to a transfer, but constructive delivery may be sufficient.

In *Howe* v. *Ould,* 28 Gratt. (69 Va.) 1, it is held: ''Whether a purchaser or an endorsee of negotiable paper has acquired

such possession, actual or constructive, as is sufficient for all the purposes of the transfer, must always depend on the particular circumstances of each case." There can be no question but that both Nordin and the bank, as to the dealings with the paper, were innocent holders for value. In 19 California Jurisprudence, page 863, section 56, it is said: "The uniform law which is now in force provides that, 'a holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon'."

In 8 California Jurisprudence, section 759, referring to the Negotiable Instruments Law, it is declared: "It is held thereunder that non-delivery is no defense as against a *bona fide* holder, including the defense that the instrument was stolen from the maker before delivery." Section 3097 of the Civil Code, among other things, says: "But when the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him, is conclusively presumed."

■ In the light of these authorities, the facts show that the owner of the notes and mortgages indorsed them in blank and delivered them to Klein as collateral security for a loan; that the latter being in possession of them, indorsed them to the First Trust & Savings Bank of Pasadena, and delivered them to the last named bank as security for his personal obligation of $7,000. Before the plaintiff purchased said notes and mortgages from said Klein he examined the county records and found that said documents stood of record in the name of Klein. Before purchasing, he required a letter from the defendant bank as to the status of the title, as above set forth, the bank acknowledged title to be in Klein, and stated that the property would be turned over to plaintiff Nordin upon the payment of their promissory note against Klein. On the day of the purchase by plaintiff he called up the defendant and was informed that Klein still owned the security. We are of the opinion that under the above facts this was a constructive delivery of the instruments by the defendant bank to Nordin, and it thereafter held the same as security for the note given it by Klein and under no claim of title, and when the plaintiff tendered

to the bank the amount due on the note, its failure to accept the tender and deliver the pledged property was an unlawful conversion of the plaintiff's property. ██ Both the plaintiff and the defendant were innocent of any wrongdoing in the transaction above set forth, but it also appears therefrom that the plaintiff was induced to act to his injury by the representation of the defendant bank. It is one of the maxims of jurisprudence that ''where one of two innocent persons must suffer by the act of the third, he, by whose negligence it happened, must be the sufferer''. (Sec. 3543, Civ. Code; *Powers* v. *Pacific Diesel Engine Co.,* 206 Cal. 334 [73 A. L. R. 1398, 274 Pac. 512]; *Shirley* v. *All Night & Day Bank,* 166 Cal. 50 [134 Pac. 1001]; *Schultz* v. *McLean,* 93 Cal. 329 [28 Pac. 1053]; *Burgess* v. *California Mutual B. & L. Assn.,* 210 Cal. 180 [290 Pac. 1029].) The case last cited appears to be in point. Daniel McKillop and his wife executed a deed of trust in which the California Mutual Building & Loan Association was the beneficiary. It was given to secure the payment of a promissory note for $20,000 and future advances. The security given was two pieces of real property, one called the McKillop Heights property and the other the Wayne Street property. McKillop at that time was engaged in developing the McKillop Heights property as a subdivision. Although there was no provision in the deed for that purpose, from time to time individual lots were released from the effect of the deed. After certain negotiations the beneficiary under said trust deed wrote a letter to said Daniel McKillop in which it was agreed that for a consideration of $6,000 it would release certain property which was called the Burgess property, from the effect of said trust deed. At the time he obtained the said letter, McKillop, without the knowledge of the California Mutual B. & L. Association, negotiated a loan from Burgess, the plaintiff in said action, in the sum of $12,000, and represented that said property could be released from the first deed of trust on the payment of $6,000. The above letter, when obtained, was deposited with a title insurance company, and when the deal between McKillop and Burgess was closed it was delivered to Burgess. Thereafter McKillop's business affairs became bad and he was finally adjudged a bankrupt. In January, 1927, Burgess called upon the above mentioned Association and tendered the sum of

$6,000, and demanded that it reconvey said Burgess property, which demand was refused. In holding that Burgess had a right to rely upon the letter written by the Association and obtain a release from their trust deed, the decision of the Supreme Court was based upon the doctrine of estoppel. At page 187, of 210 Cal., it is said: "But the rights of the appellant, (Burgess) if any, accrued immediately when, in reliance upon the document, it loaned the money to Mc-Killop, and we are unable to reach any other conclusion than that the effect of the transaction was to supply a substitute for a consideration for this promise, and to bring into operation the well known doctrine of estoppel." ▮ In the case at bar, when the appellant Nordin acted upon the letter of the defendant bank and its oral information given to him, to the extent of purchasing the property from Klein, the doctrine of estoppel was available to Nordin as against the defendant. It is further said in the Burgess case: "In short, the application of the doctrine of estoppel has been made to myriads of different sets of facts, and wherever necessary to prevent renunciation from working a fraud upon the party misled, the doctrine is applicable and supplies the absence of a consideration for the promise. We are not attributing fraudulent intent to respondent, but are merely considering the practical effect of its contention if allowed to prevail."

Other objections to the judgment have been made by the appellant, but we are satisfied that what has already been said is controlling, and the judgment must be affirmed. It is so ordered.

Plummer, Acting P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 30, 1931, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 28, 1932.