[S. F. No. 12954. In Bank.—August 1, 1930.]

CHANDLER W. BURGESS, Appellant, v. CALIFORNIA MUTUAL BUILDING AND LOAN ASSOCIATION (a Corporation) et al., Respondents.

Treat & Ogden for Appellant.

Jones & Boalt, Jones & Douglas and Jones, Boalt, Patterson & Douglas for Respondents.

PRESTON, J.—That portion of the opinion of the Honorable District Court of Appeal which contains a statement of the issues involved, as well as its disposition of the motion to dismiss the appeal, is hereby adopted as a portion of the opinion of this court herein, as follows:

"On the 9th day of October, 1924, one Daniel McKillop and Josephine McKillop, his wife, executed a deed of trust, in which the respondent California Mutual Building and Loan Association was the beneficiary, to secure a promissory note in the sum of $20,000, and also future advances which said respondent should make to said McKillop, and further advances were made and other notes given. The deed of trust conveyed a tract of land, which, for convenience, will be referred to as the McKillop Heights property, and another tract, which will be referred to as the Wayne street property. The descriptions of the various tracts referred to in this opinion are very lengthy, and no useful purpose will be served by setting them out in full. McKillop at that time was engaged in developing the McKillop Heights property as a subdivision, selling lots and building homes thereon. From time to time, although there was no provision in the deed of trust to that effect, individual lots were released from the lien and reconveyed upon payments being made to said respondent. On December 2, 1925, under circumstances which will be more fully detailed hereafter, said Daniel McKillop obtained a letter .from said

respondent relative to the release of a portion of the Mc-Killop Heights property, which portion, for convenience, will be referred to as the Burgess property, which letter reads as follows:

" 'California Mutual Building and Loan Association
" '248 South First St., San Jose, Calif.
" 'December 2, 1925.
" 'Mr. Daniel R. McKillop,
" '354 Russ Bldg.,
" 'San Francisco, Calif.
" 'Dear Mr. McKillop:
" 'Confirming our conversation of today, this is to advise that this Association will release the following described property from under the terms of our Deed of Trust covering property described as McKillop Heights, Oakland, for the sum of $6,000.00.' "

[Here follows description of Burgess property.]

" 'Yours very truly,
" 'CALIFORNIA MUTUAL BUILDING & LOAN ASSOCIATION.
" 'W. B. RICE,
" 'Secretary.
" 'WBR:LM'

"At the time he obtained said letter McKillop, without the knowledge of the respondents, was negotiating a loan from appellant in the sum of $12,000, to be secured by a second deed of trust on said Burgess property, and represented to appellant that the property could be released from the first deed of trust on the payment of $6,000. The letter, when obtained, was deposited with the California Pacific Title Insurance Company, and, upon the closing of the transaction between appellant and McKillop, was delivered to appellant. The deeds of trust from McKillop to Burgess were executed on the 18th of December, 1925. Some time in 1926 McKillop's financial condition became very bad. He ceased his development work on the Mc-Killop Heights property, defaulted in his payments to respondents, and finally was adjudged a bankrupt. In October, 1926, McKillop, being in default in his payments, the respondent La Motte, who had been substituted as trustee in the original deed of trust of October, 1924, gave notice of default and of an intention to sell so much

of the McKillop Heights property as remained subject to the lien of the deed of trust, in accordance with law, to satisfy the claim of the respondent California Mutual Building and Loan Association. In January, 1927, appellant called at the office of the Loan Association and tendered to it the sum of $6,000 and demanded of it a reconveyance of said Burgess property. The tender was not accepted and the reconveyance was refused, and thereafter appellant commenced this action to enjoin the sale of said Burgess property and to obtain a reconveyance of the same. The case was tried before the court, which gave judgment for the defendants, and plaintiff appealed.

"No stay bond having been filed, the trustee proceeded, pending the appeal, to sell said Burgess property under the terms of the deed of trust, and at the sale appellant became the purchaser, paying therefor the sum of $10,000. Subsequently respondents made a motion to dismiss the appeal upon the ground that appellant, having received from the trustee a conveyance of the property, has now all that he asked in his complaint, and that the question is now moot. The motion to dismiss and the appeal on its merits were argued and submitted together.

"So far as the motion to dismiss the appeal is concerned, it is hardly an accurate statement of the facts to say, as respondents do, that appellant has obtained all that he was seeking by his complaint. It is true that he has now the title to the property, free and clear, of the lien of the respondents' deed of trust, but instead of a reconveyance for $6,000 he obtained a conveyance from the trustee for $10,000. It cannot well be said that he voluntarily became a purchaser, because the proceedings for the trustee's sale were inaugurated by the respondents, and appellant was by such act of the respondents placed in a position where he had to do something to protect his rights. He might have chosen some other means, perhaps, but he has not waived his right to prosecute his appeal by doing what he did. The situation is analogous to a case where, pending an appeal, the appellant, in order to prevent an execution sale, pays the amount of the judgment. In such case, unless there is some agreement of compromise, or an understanding that the appeal will not be prosecuted, the mere payment does not operate to deprive the appellant

of his rights. (*Warner Bros. Co.* v. *Freud,* 131 Cal. 639 [82 Am. St. Rep. 400, 63 Pac. 1017]; *Knight* v. *Marks,* 183 Cal. 354 [191 Pac. 531].)

"In the case of *Sunset Lumber Co.* v. *Bachelder,* 167 Cal. 512 [Ann. Cas. 1916B, 664, 140 Pac. 35, 36], a mechanic's lien had been held to be prior to that of a mortgagee. Pending an appeal by the mortgagee the mechanic's lien was foreclosed, and the mortgagee bid in the property and paid the amount of the judgment to the lien claimant. On the appeal it was contended that by so acting he had waived his right to appeal, but the Supreme Court held otherwise, saying:

" 'In order to protect his own interests, in the absence of a stay of proceedings, Rankin (the mortgagee) was compelled to appear at the foreclosure sale and make such bid as might be necessary to have the property bring its reasonable value. The case is governed by the same principles as where a defendant against whom a judgment is rendered has appealed after execution has been taken out and enforced against him. In such cases the rule is said to be that "a forced payment by execution sale against a nonconsenting judgment debtor cannot be held to abridge any of his rights upon or under the appeal." (*Vermont Marble Co.* v. *Black,* 123 Cal. 23 [55 Pac. 599]; *Kenney* v. *Parks,* 120 Cal. 24 [52 Pac. 40]; *Warner Bros. Co.* v. *Freud,* 131 Cal. 639 [82 Am. St. Rep. 400, 63 Pac. 1017].) The same principle applies here. The defendant Rankin was compelled to submit to the sale and protect his interest by bidding thereat, and he is not thereby estopped from availing himself of an appeal from the part of the judgment which is to his prejudice and upon the reversal of which the remaining parts of the judgment will stand unaffected.'

"Counsel for respondents, in support of the motion to dismiss the appeal, rely to a large extent upon the case of *Preluzsky* v. *Pacific Co-operative C. Co.,* 195 Cal. 290 [232 Pac. 970, 971]. That case lays down the rule quoted by respondents as follows: 'It is the general rule that a voluntary satisfaction of a judgment by a party estops him to prosecute an appeal therefrom.' But the court continues in the same sentence: 'But where such satisfaction is involuntary and enforced by process, the mere circumstance that

the judgment has been so satisfied does not of itself alone deprive a party aggrieved of his right to appeal therefrom.'

"Respondents' contention that the act of appellant in the case at bar was a voluntary one is, we think, completely answered by the ruling in *Sunset Lumber Co.* v. *Bachelder, supra.*

"Respondents also advance the theory that as appellant bid $10,000 for the property instead of $6,000, the amount he sought to pay for the reconveyance, and as respondents permitted appellant to purchase for $10,000 instead of requiring him to pay the sum of $19,984.33, the balance found to be due to them, the situation must be regarded as in the nature of a compromise. It is a sufficient answer to this contention to say that outside of the mere facts so mentioned there is no showing in the record on the motion to dismiss of any compromise in the matter, and we are not at liberty to make a contract of compromise or satisfaction for the parties when they themselves have not done so.

"The motion to dismiss the appeal should be denied."

On the merits of the appeal many questions are raised by appellant, but, as we view the case, only the question of estoppel requires discussion.

The letter above quoted was obtained practically on a mere request by McKillop. Defendant made no inquiry as to the specific use that would be made of it but he was told by McKillop that it was to be used in a transaction of some kind with a third person, involving title to the tract in suit. McKillop, as a witness, was not asked to repeat what he said at the time the letter was secured. He was simply asked if he told the defendant he was negotiating with plaintiff to which he replied in the negative. But the sole witness on this point, an officer of defendant, among other things stated in substance the following: That he wrote the letter and conducted the negotiations with McKillop; that he knew the letter was wanted to show to other persons; that McKillop furnished him with the description to go in the letter, and he further testified: "I knew he wanted it so he could negotiate with other people for development in the tract. He requested frequently statements from us as to what it would take to release, in order that he could use it for development. . . . He wanted to know

when he was building on the property what he could do with us in the matter of releasing, but didn't explain to me with whom he was dealing, or what it was to be about. He was contemplating doing something with the piece of property and wanted to know what it would take to release it." At another time the witness, in answer to the following question, "He didn't mention the plan in connection with the securing of this letter?" said "No," and in answer to the following question, "And this letter was written for the purpose of enabling him to carry out that plan?" said "To enable him to carry on any negotiation looking for the development of the property."

The only deduction possible from this testimony is that without investigation and with knowledge that the letter was wanted to further a transaction with a third party, involving the title to the property, the defendant, without a single condition, written therein, uttered the document in question. It is also undisputed that, relying solely upon this document, plaintiff, immediately after it was secured, loaned on this property, in connection with some other property, the sum of $12,000, taking a second deed of trust thereon to secure the loan. This deed of trust was promptly placed of record, thereby imparting constructive notice to the defendant. This situation remained until October, 1926, when actual notice of the exact situation was given to defendant by plaintiff through direct correspondence.

No effort was made to avoid or withdraw the promise. Later and on January 24, 1927, appellant regularly tendered to defendant in gold coin the sum named in the letter. No objections were made to the amount or sufficiency of the tender but the reconveyance was refused. The effect, if any, of a failure to sooner tender the amount called for was not made an issue in the case, respondent's principal reliance being upon the fact that at the time the document was issued, the McKillop loan was in good condition and the development of the tract was progressing satisfactorily while at the time of the tender a different state of facts existed. It is also the contention of defendant that the letter was delivered on condition of the loan and conditions generally in the tract being satisfactory. But the rights of appellant, if any, accrued immediately when in reliance on

the document, it loaned the money to McKillop and we are unable to reach any other conclusion than that the effect of the transaction was to supply a substitute for a consideration for this promise and to bring into operation the well-known doctrine of estoppel.

■ This doctrine is applied, when necessary, to prevent the acts of a party from operating as a fraud upon one who has been deliberately led to rely thereon. (Code Civ. Proc., sec. 1962, subd. 3.) Apposite to the above statement is the language of the court with reference to a future promise found in the case of *Union Mut. Life Ins. Co.* v. *Mowry*, 96 U. S. 544, 547, 548 [24 L. R. A. 674, see, also, Rose's U. S. Notes], which is as follows: "The doctrine of estoppel is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect, if a party who, by his statements as to matters of fact, or as to his intended abandonment of existing rights, had designedly induced another to change his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statements, or enforce his rights against his declared intention of abandonment." Approving this doctrine see *Stayton* v. *Graham*, 139 Pa. St. 1, 12 [21 Atl. 2].

The rule is stated in *Johnson* v. *Longley*, 142 Ga. 814, 816 [83 S. E. 952, 953], as follows: "In 2 Hare & Wall. Am. Lead. Cas. 480, 481, it is said: 'A promise to look solely to the creditor (debtor?), or a promise to proceed forthwith against him, is, when standing alone, a *nudum pactum* that can have no effect on the obligation of the surety. And this is equally true of an allegation that the debt has been paid and that the surety will have no further trouble. When, however, the surety is induced by such an assurance to surrender the securities which he has received from the principal, or to forego any means of indemnity or protection, an estoppel will arise to the extent of the resulting loss.' " (See, also, 1 Williston on Contracts, sec. 139, p. 309, on the topic of estoppel as a substitute for consideration.)

■ We cannot see that an unexpressed condition, if any, that may have attended the delivery of this document, may be of any avail to defendant against the claim

of plaintiff unless knowledge of such condition was brought home to him prior to the time he advanced the amount of the loan upon the faith of the document as written. Neither can we accord weight to the fact that respondent did not know the identity of plaintiff as the party with whom Mc-Killop was dealing. Knowledge at the time of the identity of the third party for whose benefit the promise was given is not a material consideration where estoppel is sought to be invoked. We regard the case of *National Hardware Co.* v. *Sherwood,* 165 Cal. 1 [130 Pac. 881, 882], as presenting a situation similar in principle to the one before us. There the beneficiary under a second deed of trust was held to be estopped to show a prior lien to be less than its face value as against a party who had purchased it at full value relying upon a recital in the deed of trust as follows: "This trust deed is given to secure the purchase price of said property, but is second and subsequent to the lien of a mortgage for the sum of $3000 in favor of L. E. Jones." Again, treating McKillop as the third party, the language of section 3543 of the Civil Code, as follows, seems applicable: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." (See, also, *Powers* v. *Pacific Diesel Engine Co.,* 206 Cal. 334 [274 Pac. 512].)

In short, the application of the doctrine of estoppel has been made to myriads of different sets of facts and wherever necessary to prevent renunciation from working a fraud upon the party misled, the doctrine is applicable and supplies the absence of a consideration for the promise. Of course, we are not attributing fraudulent intent to respondent but are merely considering the practical effect of its contention if allowed to prevail.

It follows from these considerations that the motion to dismiss the appeal should be denied and the judgment reversed and it is so ordered.

Waste, C. J., Shenk, J., Richards, J., Seawell, J., and Curtis, J., concurred.

Rehearing denied.