[Civ. No. 27912.    Second Dist., Div. Two.    Aug. 31, 1964.]

NEPTUNE GUNITE COMPANY, Plaintiff and Respondent, v. MONROE ENTERPRISES, INC., et al., Defendants and Appellants.

Frank De Marco, Jr., for Defendants and Appellants.

Pregerson & Costley and William M. Costley for Plaintiff and Respondent.

ASHBURN, J.*—Defendants Monroe Enterprises, Inc., and Griswold & Sons Construction Co., Inc., appeal from judgment establishing and foreclosing a mechanic's lien upon certain real property in La Puente, Los Angeles County, which judgment runs against them as owners and in favor of a sub-subcontractor, Neptune Gunite Company. Griswold & Sons Construction Co., Inc., (hereinafter referred to as Griswold) was general contractor for developing as a subdivision property standing in the name of Monroe Enterprises, Inc., (hereinafter referred to as Monroe). Keith M. Thompson (doing business as K. M. T. Construction Co. and referred to as Thompson) made a subcontract with Griswold requiring Thompson to construct a drainage channel on the property. Thompson, in turn, employed plaintiff Neptune Gunite Company (Neptune) as his subcontractor to do the "guniting" of the slopes of the channel. Thompson is not and has not been a party to this action. The court found correctly that: "Neither of the defendants had any direct contractual relations with the plaintiff, nor was a request made by either of the defendants to the plaintiff, to perform the work."

This case turns upon the applicability of the doctrine of promissory estoppel to the situation presented by the lien claim of a sub-subcontractor against the property owner with whom he has had no relations. As applied to this field that doctrine is stated in *Drennan* v. *Star Paving Co.*, 51 Cal.2d 409 [333 P.2d 757], a case arising between a general contractor and his own subcontractor. Plaintiff Drennan, the general contractor, had based his own successful bid on that of defendant subcontractor. On the next day after defendant's bid was accepted and after plaintiff had been awarded the general contract, defendant claimed a mistake in its bid and refused to perform. Plaintiff had no knowledge or reason to know of this mistake at the time he made his own bid and was awarded the general contract. Plaintiff recovered the difference between defendant's bid and the actual cost to plaintiff of doing the subcontractor's work. At page 413 the Supreme Court said: "Thus the question is squarely presented: Did plaintiff's reliance make defendant's offer irrevocable?

"Section 90 of the Restatement of Contracts states: 'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

or forbearance is binding if injustice can be avoided only by enforcement of the promise.' This rule applies in this state. [Citations.]

"Defendant's offer constituted a promise to perform on such conditions as were stated expressly or by implication therein or annexed thereto by operation of law. [Citation.] Defendant had reason to expect that if its bid proved the lowest it would be used by plaintiff. It induced 'action . . . of a definite and substantial character on the part of the promisee.' "

At page 415: "When plaintiff used defendant's offer in computing his own bid, he bound himself to perform in reliance on defendant's terms. Though defendant did not bargain for this use of its bid neither did defendant make it idly, indifferent to whether it would be used or not. On the contrary it is reasonable to suppose that defendant submitted its bid to obtain the subcontract. It was bound to realize the substantial possibility that its bid would be the lowest, and that it would be included by plaintiff in his bid. It was to its own interest that the contractor be awarded the general contract; the lower the subcontract bid, the lower the general contractor's bid was likely to be and the greater its chance of acceptance and hence the greater defendant's chance of getting the paving subcontract. Defendant had reason not only to expect plaintiff to rely on its bid but to want him to. Clearly defendant had a stake in plaintiff's reliance on its bid. Given this interest and the fact that plaintiff is bound by his own bid, it is only fair that plaintiff should have at least an opportunity to accept defendant's bid after the general contract has been awarded to him. . . .

"Defendant contends, however, that its bid was the result of mistake and that it was therefore entitled to revoke it. It relies on the rescission cases of *M. F. Kemper Const. Co.* v. *City of Los Angeles,* 37 Cal.2d 696 [235 P.2d 7], and *Brunzell Const. Co.* v. *G. J. Weisbrod, Inc.,* 134 Cal.App.2d 278 [285 P.2d 989]. (See also *Lemoge Electric* v. *County of San Mateo,* 46 Cal.2d 659, 662 [297 P.2d 638].) In those cases, however, the bidder's mistake was known or should have been to the offeree, and the offeree could be placed in status quo. Of course, if plaintiff had reason to believe that defendant's bid was in error, he could not justifiably rely on it, and section 90 would afford no basis for enforcing it. (*Robert Gordon, Inc.* v. *Ingersoll-Rand Co.,* 117 F.2d 654, 660.) Plaintiff, however, had no reason to know that defend-

ant had made a mistake in submitting its bid, since there was usually a variance of 160 per cent between the highest and lowest bids for paving in the desert around Lancaster. He committed himself to performing the main contract in reliance on defendant's figures. Under these circumstances defendant's mistake, far from relieving it of its obligation, constitutes an additional reason for enforcing it, for it misled plaintiff as to the cost of doing the paving. Even had it been clearly understood that defendant's offer was revocable until accepted, it would not necessarily follow that defendant had no duty to exercise reasonable care in preparing its bid. It presented its bid with knowledge of the substantial possibility that it would be used by plaintiff; it could foresee the harm that would ensue from an erroneous underestimate of the cost. Moreover, it was motivated by its own business interest. Whether or not these considerations alone would justify recovery for negligence had the case been tried on that theory (see *Biakanja* v. *Irving,* 49 Cal.2d 647, 650 [320 P.2d 16] ), they are persuasive that defendant's mistake should not defeat recovery under the rule of section 90 of the Restatement of Contracts. As between the subcontractor who made the bid and the general contractor who reasonably relied on it, the loss resulting from the mistake should fall on the party who caused it.''[1]

Of the cases cited in the foregoing quotation that of *M. F. Kemper Const. Co.* and that of *Brunzell* present instances in which the bidder was relieved from an honest clerical mistake which was known to the offeree at the time the bid was accepted and it was held that the accepting party could not take advantage of the known mistake of the other party. In the *Kemper* case the court observed at page 704 of 37 Cal.2d 696: ''. . . the cases recognize no distinction between public and private contracts with regard to the right of equitable relief.''

Other cases dealing with this subject of bidder's mistake are: *Lemoge Electric* v. *County of San Mateo,* 46 Cal.2d 659 [297 P.2d 638] ; *Elsinore Union etc. Sch. Dist.* v. *Kastorff,* 54 Cal.2d 380 [6 Cal.Rptr. 1, 353 P.2d 713] ; *Norcross* v. *Winters,* 209 Cal.App.2d 207 [25 Cal.Rptr. 821] ; *MacIsaac & Menke Co.* v. *Freeman,* 194 Cal.App.2d 327 [15 Cal.Rptr. 48]. The result in each case was dictated primarily by the presence or

---

[1]This doctrine closely parallels that of section 3543, Civil Code: ''Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer.''

absence of knowledge of the mistake of the offeror, knowledge acquired before the offeree had changed his position in reliance upon the face of the bid. (See also 13 Am.Jur.2d § 107, pp. 101-102; note 52 A.L.R.2d 792, 794-795.)

Neptune's men worked on this job on September 27 and 28, 1961. On the 28th its general manager, Mr. Stanley G. Zynda, discovered that Neptune's employee Schwartz had made an error in computing its bid in that he used $1.37 per *lineal* foot as the basis which, as found by the court, was "a result of an inadvertent error of substantial magnitude." A previous and recent contract between the same parties had specified $1.37 per *square* foot. This latter basis would bring $39.86 per cubic yard while the $1.37 per lineal foot would amount to $6.53 per cubic yard. Mr. Zynda testified that he promptly contacted Thompson and pointed out that there was a radical error in the contract and also the basis of computation for same; that Schwartz had used the figure of 37 cubic yards rather than 370 cubic yards and Neptune would have to have some adjustment in price. Also that the contract was on a cubic yard basis at $32 a cubic yard, and the witness asked if Thompson would proceed upon that basis; he said he would and asked Zynda to put two rigs on the job on the next day. Neptune did this on the 29th. On that same day Zynda met Thompson to sign a new contract at the rate of $32 a cubic yard but Thompson said he would not sign it. Mr. Zynda also testified that this would make the contract $12,000 instead of the specified $2,721; that the error amounted to 600 per cent. Neptune stopped work immediately and gave notice of rescission on October 4, 1961; this was followed later by the instant foreclosure action.

The doctrine of the *Drennan* and similar cases has been misapplied in the case at bar. ■ Examination of the California cases above cited will reveal that relief from mistake in a bid was approved only in cases where the party litigants were in contractual privity with each other—not against one who had no contract and no other relation with the party who made the mistake. *Kemper* arose between general contractor and owner city; *Drennan* between general contractor and his own subcontractor; *Brunzell* between general contractor and subcontractor; *Lemoge* between general contractor and owner county; *Elsinore Union etc. Sch. Dist.* between general contractor and owner school district; *Norcross* between contractor and subcontractor; *MacIsaac*, general contractor and his subcontractor.

■ As heretofore mentioned Thompson, the subcontractor

of Griswold, the general contractor, is not a party to this litigation and has not been a party. It is the sub-subcontractor who has visited upon the owner the burden of his mistake and no principle of equity sanctions this. As we pointed out in *Powers Regulator Co.* v. *Seaboard Surety Co.*, 204 Cal.App. 2d 338, 345-346 [22 Cal.Rptr. 373]: ''A sub-subcontractor has no agreement with the general contractor and the latter owes him nothing—regardless of nonpayment by his immediate employer. . . . Just as the materialman or sub-subcontractor has no right to a personal judgment against the owner of a private work upon foreclosure of his mechanic's lien (*Roberts* v. *Security T. & S. Bank*, 196 Cal. 557, 573-574 [238 P. 673]; *Builders' Supply Depot* v. *O'Connor*, 150 Cal. 265, 267 [88 P. 982, 119 Am. St. Rep. 193, 17 L.R.A. N.S. 909]), so those same claimants have no personal claim against the general contractor upon a public improvement. (*Hub Hardware Co.* v. *Aetna Acc. etc. Co.*, 178 Cal. 264, 267 [173 P. 81].) This is due to lack of privity of contract.

''In the case of a private job the materialman or sub-subcontractor may look to a lien upon the owner's property or to a personal claim against the subcontractor who hired him, but not to the landowner himself for payment of his claim. (*Roberts* v. *Security T. & S. Bank, supra; Builders' Supply Depot* v. *O'Connor, supra*) . . . he has no valid claim against anyone (such as owner or general contractor) with whom he has no contractual relationship. Of course, he has the right to file a stop notice pursuant to section 1190.1, Code of Civil Procedure, and thus effect an equitable garnishment in the hands of the owner of any money payable but as yet unpaid to the general contractor (41 Cal.Jur.2d § 53, p. 435), but that does not spell personal liability of the general contractor to the sub-subcontractor or the materialman (*Los Angeles Stone Co.* v. *National Surety Co.*, 178 Cal. 247 [173 P. 79]; *Hub Hardware Co.* v. *Aetna Acc. etc. Co., supra*, 178 Cal. 264).''

Mr. Justice Fourt in *Norcross* v. *Winters, supra*, 209 Cal. App.2d 207, 217: ''The mere fact that a general contractor uses a subcontractor's bid as part of the general contractor's overall bid does not thereby create a contract between the general contractor and the subcontractor. It is stated by Mr. Justice Peters in *Klose* v. *Sequoia Union High School Dist.*, 118 Cal.App.2d 636 [258 P.2d 515] at pages 640-641, as follows in pertinent part:

'' 'Petitioner's arguments are necessarily predicated upon

the concept that a subcontractor, whose name is submitted with the bid of the general contractor, in some undefined way, secures some legal rights when the general contractor's bid is accepted by the awarding authority. In the absence of statute that is not the law. A subcontractor bidder merely makes an offer that is converted into a contract by a regularly communicated acceptance conveyed to him by the general contractor. *No contractual relationship is created between the subcontractor and the general contractor even though the bid is used as part of the general overall bid by the general contractor and accepted by the awarding authority. (Williams* v. *Favret*, 161 F.2d 822; 1 Corbin on Contracts, p. 58, § 24, particularly cases cited in fn. 11 on p. 59.) ' (Emphasis added.)

''Therefore, while the use of a subcontractor's bid by the general contractor does not ipso facto create a contract between the general contractor and the subcontractor (i.e., does not constitute an implied acceptance of the subcontractor's offer), it does, as illustrated by *Drennan* v. *Star Paving Co.*, 51 Cal.2d 409 [333 P.2d 757] make the subcontractor's bid (offer) irrevocable.''

▪ The filing in the recorder's office of the owner's contract with the general contractor is designed and operates to limit his liability to the contract price (Code Civ. Proc., § 1185.1, subd. (d)). ▪ If a subcontractor of a subcontractor who has a contract to do part of the work for $2,721 can, through his own mistake, increase the liability of the owner's land to the extent of $12,000, the object of the statute has been defeated and sound principles of equity subverted; the owner's right to withhold from the general contractor an amount to cover the debt owing to his subcontractor has disappeared and the subcontractor's mistakes have been visited upon an entirely innocent third party.

For the foregoing reasons this judgment must be reversed. But there is another ground for so doing. Section 1185.1, Code of Civil Procedure, commands that ''(a) . . . Such liens shall not in any case exceed in amount the reasonable value of the labor done or the material furnished, or both, for which the lien is claimed, *nor the price agreed upon for the same between the claimant and the person by whom he was employed.*'' (Italics added.)

▪ *Lemoge Electric* v. *County of San Mateo*, 46 Cal.2d 659, 664 [297 P.2d 638], says that: ''. . . since there was an express contract for a sum certain, plaintiff cannot recover on the theory of an implied contract for the reasonable value of services performed.'' (See also 32 Cal.Jur.2d § 34, p. 640.)

The court found that the reasonable value of the work done by plaintiff was $5,000, declared and foreclosed a lien against defendant's property for that amount. This was palpable error.

While it may be true that respondent herein had a right to rescind as to Thompson the contract between them, he could not thereby affect any of the rights of the owner-defendant who owed him no debt or other obligation.

The record also shows that the attempted lien was never competently perfected. Section 1193, Code of Civil Procedure, provides that one who is in plaintiff's situation "must, as a necessary prerequisite to the validity of any claim of lien subsequently filed, cause to be given not later than 15 days prior to the filing of a claim of lien a written notice as prescribed by this section, to the owner or reputed owner and to the original contractor." Plaintiff herein through its attorney served a notice of rescission upon Thompson on October 4, 1961, which was addressed to him and says in the first two paragraphs:

"This letter is written on behalf of our client Neptune Gunite Co., Inc., and is intended as a notice of rescission on their behalf of the agreement entered into with you on the date of August 29, 1961.

"The basis for this rescission is a mistake as to a material fact, namely for the cost per lineal foot for guniting."

The last paragraph says: "A copy of this letter is being sent to Griswold & Sons, the developers of this tract."

The court found that this was a notice of rescission but also found that "the subject of that letter constitutes notice within the meaning of section 1193 of the Code of Civil Procedure." This latter conclusion is plainly erroneous. The document is neither ambiguous nor was it the subject of parol explanation; its construction is a matter of law to be made by the reviewing court which is not bound by the interpretation of the lower court. (*Apra* v. *Aureguy*, 55 Cal.2d 827, 830 [13 Cal.Rptr. 177, 361 P.2d 897]; *Prickett* v. *Royal Ins. Co. Ltd.*, 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R.2d 711].)

When the impact of the foregoing considerations is recognized, other points discussed in the briefs of counsel pale into insignificance. We may assume with respondent that the two defendants were, as found by the court, "the alter egos of Henry Griswold" and that both were the owners of the real property, but that does not substantially change the

situation for it leaves Thompson as the first or principal contractor and plaintiff a subcontractor under him, hence the principles above discussed are applicable and lead to the same result as above indicated.

Whether the conversation between Mr. Zynda and Mr. Thompson concerning the mistake was hearsay as to defendants and erroneously received becomes unimportant. Defendants' counsel, though recording a formal objection, practically invited the court to overrule same. ▮ We may assume that it was competently shown that Thompson knew of Neptune's mistake when he accepted its bid but that is of no consequence for his knowledge would not affect the defendants, the owners who had no privity with plaintiff. ▮ Also the fact that this same matter was discussed with Mr. Lindeman, an employee of defendant Griswold, does not change the picture, for the reasonable inference from the record before us is that this occurred after, not before, Griswold made its contract with Thompson.

The judgment is reversed with instructions to the lower court to prepare and file new findings in conformity with the views herein expressed and to enter judgment in favor of defendants.

Herndon, Acting P. J., and Roth, J., concurred.

A petition for a rehearing was denied September 16, 1964, and respondent's petition for a hearing by the Supreme Court was denied October 28, 1964. Peters, J., was of the opinion that the petition should be granted.