[Civ. No. 25023.   First Dist., Div. Two.   Mar. 20, 1969.]

PETERSON TRACTOR CO., Plaintiff and Respondent, v. ORLANDO'S SNACK-MOBILE CORPORATION et al., Defendants and Appellants.

John R. Forde, Jr., for Defendants and Appellants.

Fitzgerald, Abbott & Beardsley and Philip M. Jelley for Plaintiff and Respondent.

TAYLOR, J. — Respondent, Peterson Tractor Company, brought this action for payment of parts and performances of services against Litecrete Construction Company, Orlando's Snack-Mobile Corporation, Orlando Coccimiglio, La Von R. Coccimiglio, Raymond A. Nelson, and Henry G. Harrison. Litecrete Construction Company, Raymond A. Nelson and Orlando Coccimiglio defaulted. Judgment was rendered in favor of respondent against all defendants in the amount of $8,474.49, plus interest. Orlando's Snack-Mobile and La Von R. Coccimiglio alone have appealed.

The facts presented in the trial court, reviewed in a light most favorable to the judgment, are as follows: During the year 1964, Litecrete Construction Company was engaged in construction work in the San Francisco Bay Area. Its president was defendant Orlando Coccimiglio. His wife, La Von R. Coccimiglio, was secretary, treasurer and a director of Litecrete and also the president and major shareholder of Orlando's Snack-Mobile Corporation. Defendant, H. G. Harrison, was vice-president and a director of Litecrete. Raymond A. Nelson was employed by and financially interested in Litecrete.

In order to obtain a favorable financial credit report for Litecrete from Dun & Bradstreet, on July 6, 1964, Orlando Coccimiglio and La Von R. Coccimiglio, individually and on behalf of Orlando's Snack-Mobile Corporation, H. G. Harri-

son and Della Harrison, his wife, and Raymond A. Nelson, made, executed and delivered to Dun & Bradstreet a guarantee on Litecrete's letterhead to be liable for the discharge of all of said corporation's obligations until revocation by written notice and authorizing Dun & Bradstreet to rely upon the guarantee in determining Litecrete's credit rating and to furnish subscribers with copies thereof or its substance.[1] This guarantee was in turn redelivered by Dun & Bradstreet to the Home Indemnity Company for the purposes of securing the issuance of a bond. It was never seen, transmitted or communicated to respondent before the institution of this litigation. At no time did any of the defendants give notice revoking the guarantee to Dun & Bradstreet, respondent, or to any other creditor of Litecrete.

On July 10, 1964, Litecrete, through its president, Orlando Coccimiglio, made an application to respondent for credit for parts and servicing and supplied a financial statement entitled "Combined Financial Statement of Litecrete Construction Corp. and Orlando's Snackmobile and Four Individuals Backing Litecrete Construction Corp." This statement, dated April 13, 1964, had also been delivered to Dun & Bradstreet and other persons from whom Litecrete sought credit. The assets of all defendants were included therein.

Respondent, a subscriber to Dun & Bradstreet, requested a credit check and received reports which named defendants as interested parties in Litecrete and also stated that Litecrete and Orlando's Snack-Mobile were related concerns. Dun &

[1] "Whereas, the undersigned, ORLANDO COCCIMIGLIO, his wife, LA VON R. COCCIMIGLIO, also known as LA VON R. LYNCH, H. G. HARRISON, JR. and DELLA HARRISON, are stockholders of LITECRETE CONSTRUCTION CORPORATION, and through ownership of capital stock of the said Corporation, have an important interest in the profits of the latter; and

"WHEREAS, ORLANDO'S SNACK-MOBILE CORPORATION, with stock ownership principally by LA VON R. LYNCH, is a closely affiliated company with LITECRETE CONSTRUCTION CORPORATION; and

"WHEREAS, RAYMOND A. NELSON has an interest in the operations of the LITECRETE CONSTRUCTION COMPANY; and

"WHEREAS, for the convenient and successful conduct of the business of said Corporation it is necessary that it should receive credit in respect to its contracts;

"Now, THEREFORE, We, the undersigned, do agree that we shall—until due, written notice to the contrary be served upon Dun & Bradstreet, Inc., and existing creditors of the aforesaid Corporation—be and continue liable for the discharge of all contract obligations of the aforesaid Corporation. And it is further agreed by the undersigned that Dun & Bradstreet, Inc., may rely upon this guarantee in basing credit rating of the aforesaid Corporation, and may, in their discretion furnish their subscribers with copies, or the substance of the foregoing."

Bradstreet also furnished respondent with a copy of the combined financial statement.

In reliance upon Coccimiglio's credit application, the combined financial statement and the Dun & Bradstreet reports, on July 30, 1964, respondent approved Litecrete's application for credit, and extended credit to Litecrete for a period of approximately 60 days, when the credit was cut off due to the fact that no payments had been received. As of December 21, 1964, when the Litecrete account with respondent was closed, it totaled $8,754.49. There had been no recent activity except service charges and delayed entries of repair jobs. Litecrete became defunct.

The trial court, in rendering judgment against appellants, found that respondent relied on Litecrete's credit application, the combined financial statement, and the Dun & Bradstreet report, and that its reliance was reasonable; that defendants, in executing the guarantee on July 6, 1964, and in allowing their individual assets to be listed in the combined financial statement, knew or should have known that the same would be used to obtain credit for Litecrete's advantage. The court further found that all defendants were materially interested in the state, welfare and growth of Litecrete and benefited by the advancement of credit.

Appellants contend that since respondent was not cognizant of appellants' written guarantee and had not given appellants notice of acceptance, there was no contractual relationship between the parties upon which a cause of action could be grounded.

But respondent properly relies on a quasi-contractual remedy imposed by law to avoid unjust enrichment (*Kossian* v. *American Nat. Ins. Co.*, 254 Cal.App.2d 647 [62 Cal.Rptr. 225]). The required elements are clearly set forth in section 90 of the Restatement, Contracts, which has been repeatedly applied by the courts of this state (*Drennan* v. *Star Paving Co.*, 51 Cal.2d 409 [333 P.2d 757]). Section 90 states: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

The continuing guarantee to all creditors was delivered by appellants to Dun & Bradstreet, together with appellants' financial statements, for the purpose, stated in the guarantee,

of encouraging Dun & Bradstreet to give Litecrete a favorable credit rating and thus to induce creditors to make advances to Litecrete. Upon receipt of a favorable report from Dun & Bradstreet, including a copy of appellants' financial statements, respondent creditor, in justifiable reliance, advanced such credit. Unless appellants' commitments are enforced, appellants, as parties materially interested in Litecrete, will have been unjustly enriched at the expense of respondent. Thus, all of the required elements of a cause of action in quasi-contract under section 90 have been established.

As our conclusion herein is based on quasi-contract arising out of an unjust enrichment, we are not concerned with the question of the statute of frauds,[2] which would be relevant only if respondent had based its cause of action on contract and had not relied on facts in addition to the duly executed but undelivered guarantee.

Appellants suggest that respondent was itself negligent in extending the credit involved. The record does not show that respondent permitted any undue credit buildup before it became concerned. It did not receive notice of the assignment of Litecrete's accounts receivable to Kaiser Industries until after all advances had been made. There is nothing out of the ordinary in respondent's failure to bill appellants until the primary obligor demonstrated its inability to pay. Respondent's failure to cut off credit after receiving some unfavorable trade references on Litecrete emphasizes the fact of its reliance on appellants' financial commitments.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

[2]Code of Civil Procedure section 1974 provides: "No evidence is admissible to charge a person upon a representation as to the credit of a third person, unless such representation, or some memorandum thereof, be in writing, and either subscribed by or in the handwriting of the party to be charged."

Code of Civil Procedure section 1973 provides: "In the following cases the agreement is invalid, unless the same or some note or memorandum thereof be in writing, and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement, can not be received without the writing or secondary evidence of its contents:

". . . . . . . . . . . . .

"2. A special promise to answer for the debt, default, or miscarriage of another . . ."