**C. R. FEDRICK, INC., Plaintiff-Appellee,**

v.

**STERLING–SALEM CORPORATION, Defendant-Appellant.**

**No. 72-3118.**

United States Court of Appeals, Ninth Circuit.

Nov. 8, 1974.

Dario De Benedictis, (argued), of Thelen, Marin, Johnson & Bridges, San Francisco, Cal., for defendant-appellant.

Edward K. Allison (argued), of Ehrlich & Allison, San Francisco, Cal., for plaintiff-appellee.

Before MERRILL and BROWNING, Circuit Judges, and REAL,* District Judge.

REAL, District Judge.

This appeal brings before this Court what is, perhaps, a classic example of the various inadequacies of a Federal Court's diversity of citizenship jurisdiction.

Defendant-appellant, Sterling-Salem Corporation (hereafter Sterling) appeals from a judgment rendered by the District Court on behalf of plaintiff-respondent C. R. Fedrick, Inc. (hereafter Fedrick) on a claim arising out of a purported breach of contract in which Sterling was to supply certain equipment for a construction job at Incline Village, Nevada.

Fedrick's trial theory and the basis upon which the trial court made its findings of fact and conclusions of law and entered judgment against Sterling in the sum of $56,882.95 is grounded in promissory estoppel (Restatement of the Law of Contracts, Section 90).

Sterling, an Ohio corporation, duly authorized to conduct business in California, is engaged—through its division Topco—in the manufacture and sale of sewage pumping equipment, including

---

* Honorable Manuel L. Real, United States District Judge, Central District of California, sitting by designation.

prefabricated sewage stations. In mid-1969, Topco orally authorized one Marvin Derfler (hereafter Derfler) to act as its independent commission agent in the California area; and Derfler was so employed in the Fall of 1969 when the events now in controversy arose.

Fedrick is a licensed contractor in the State of California. In August, 1969, when the Incline Village General Improvements District (hereafter District) invited bids for the construction of certain sewage pump stations at Incline Village, Nevada, Fedrick—in response to said invitation and in order to meet the scheduled bid opening on September 4, 1969—solicited price quotations on the equipment necessary for the construction of these sewage pumping stations.

Chas. Lowe Company (hereafter Lowe), a supplier of pumps and other construction equipment, contacted Fedrick for the purpose of quoting prices on the equipment for what was then known as Sewage Pumping Stations Nos. 7, 8 and 9 of the District's planned Incline Village project.

Sharing office space with Lowe, but having no other connection with it,[1] Derfler, together with Jay Gwinn, a Lowe employee, obtained price quotations from Topco on the equipment needed for Pumping Stations 7 and 9. Derfler having informed Topco that its customer in this instance was Lowe, Topco, in the absence of Derfler, responded with price quotations to Lowe on Pumping Stations 7 and 9, at bids of $11,329.00 and $6,115.00 respectively, for a total of $17,444.00.

Upon reviewing this quotation, Lowe, through its employee, Herb Roedel, then submitted a quotation to Fedrick for $45,900.00—$21,700.00 for Station 7, $16,200.00 for Station 8, and $8,000.00

for Station 9. The variances are not totally accounted for in the evidence before the trial court. However, the difference in the Topco's quotations for Stations 7 and 9 and Lowe's quotation to Fedrick for Stations 7 and 9 is at least partially accounted for by Topco's arrangement with Derfler by which the would customarily add an amount to Topco's bid to represent his commission compensation when he in turn quoted his own bid.

An additional portion of the difference between the oral quotation to Topco's customer and its subsequent written breakdown may be attributed to Topco's correction of its obvious failure to include in its quotation to Derfler and Lowe a rotor necessary for one of the pumping stations. Derfler, however, had previously noticed the error and corrected it before submission of the bid by Lowe to Fedrick. The quotation by Topco to Derfler was then adjusted to reflect this correction, thereby changing the price of the two stations to $21,944.00 in lieu of the original $17,444.00 bid.[2]

Fedrick, utilizing the quotation received from Lowe, submitted its bid to the District, with all the foregoing occurring on September 4, 1969. As required by the District's bidding procedures, the bid stated that Lowe was the supplier and Topco[3] the manufacturer of the equipment to be used on Stations 7 and 9. Equipment for Pump Station 8 was listed as supplied by Coast Pump Company and manufactured by Allis Chalmers.

On September 16, 1969, Fedrick executed a prime contract with the District for construction of the project, while October 29, 1969, found Fedrick directing its printed form of Purchase Order Agreement to "Topco in care of Lowe."

1. For the record, the exact relationship between Derfler and Lowe is uncertain. Derfler had evidently, on some occasions prior to this transaction, quoted unsuccessfully to Lowe for the sale of the equipment he represented, but both Lowe and Derfler disclaimed any agency relationship between them.

2. What the quotation by Derfler to Lowe was is not indicated by the record.

3. Fedrick's bid inadvertently transmogrified "Topco" into "Tocpo".

This mailing was done in apparent compliance with Fedrick's common practice of addressing its purchase orders to the manufacturer of the equipment and not to the supplier. Although the evidence is far from clear, the trial court found that this purchase order eventually was mailed to Lowe's San Pedro office from its Emeryville office but never forwarded to Topco in Ohio. Topco's Ohio office was never advised of the receipt of the purchase order in San Pedro, and the purchase order was never signed or otherwise accepted by an employee of Topco. In addition, Lowe had never advised Topco that it had in any way accepted Topco's price quotation for Stations 7 and 9.[4]

Two or three weeks after the bid date Derfler and Roedel, Lowe's employee, met with a representative of Fedrick to deliver a Topco Pumping Station Catalogue. Thereafter, as is customary, Topco, through Derfler, made submittals[5] to Fedrick and the District upon the equipment which it had quoted to Lowe. During the period for which these submittals were under consideration by the District, Topco and Fedrick came to an impasse as to ability of the equipment which Topco has offered to meet the requirements of the District. The disputes were never resolved; and on March 11, 1970, Topco, by letter, in effect withdrew itself from consideration regarding its providing of Stations 7 and 9.

Fedrick then obtained Stations 7 and 9 elsewhere at a higher cost than that quoted by Topco on September 4, 1969. This suit solely against Sterling followed, and damages were founded on the delay in and additional cost of the completion of the District project by Fedrick.

As to Sterling's liability,[6] the District Court's judgment on behalf of Fedrick can withstand this appeal if (a) the trial court's findings concerning agency relationship between Topco and Lowe are not clearly erroneous, i. e., are adequately supported by the record, or (b) Topco is estopped by force of the Restatement of Contracts, Section 90 (Revised) from denying a contractual relationship between Topco and Fedrick.

■ The record does not seem to support the trial court's finding of an agency relationship between Topco and Lowe.[7] The evidence, it appears, is to the contrary since both Derfler and Lowe disclaimed any agency relationship. There is no evidence to the effect that Fedrick ever believed that it was dealing directly with Topco by means of any agency with Lowe. For all that Fedrick knew, Lowe could have previously purchased the equipment from Topco and then had it in stock for its own account. The judgment of the District

---

4. Topco was in no way involved in the equipment for Station 8.

5. Submittals contain information concerning operations, design and capacity, etc., n cessary to meet the specifications set forth in construction plans.

6. Fedrick filed suit upon an identical claim solely against Lowe in the Superior Court of San Mateo County. That court, having the ability to obtain jurisdiction over both Sterling and Lowe, could have comp¬tently disposed of this entire litigation, thereby giving to each party the opportunity to present its individual claims and defenses in order to accomplish complete justice among all the parties to these transactions. The unsatisfactory results accomplished in this litigation are essentially due to the inability of the court to reach all of the ramifications of price quotation procedures and the attendant liability which may be visited upon the participating parties. Just one of the typical questions involved herein is the suggestion in the evidence that Lowe's quotation to Fedrick was an all or nothing situation. There are innumerable others. Counsel for plaintiff never did answer this Court's inquiry as to why he had not proceeded in the state court action to a resolution of all the issues. This suit simply represents another in the continuing problems facing Federal Courts in the exercise of their diversity jurisdiction.

7. We say agency in light of the trial court's findings of fact 1.6 that "Derfler appointed Lowe to communicate Topco's offer to general contractors" and conclusion of law 2.1 that "Topco authorized Lowe."

Court, therefore, cannot stand on this theory of the case.

As an alternative, Fedrick asks this court to affirm on the Restatement of Contracts Section 90 (Revised) which provides:

"A promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee *or a third person* and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." (Emphasis supplied).

■ This revised Section 90 extends to third parties the benefits that erstwhile Section 90 created solely between promisor and promisee. It brings to this court, as a matter of first impression, the application of this *revised* Section 90 to price quotations by manufacturers to general contractors. That this court should not make this extension is compelled by the facts here and, further, by a consideration of the consequences of such application to like situations.

To apply Revised Section 90 here, we need address ourselves to the various elements involved in price quotation situations. Hence, there must be:

1. A manufacturer;

2. An intermediary, for our purposes, independent of the manufacturer, i. e., not an agent;

3. Reasonable expectation that a *particular* third party will rely upon the manufacturer's promise [8] and

4. Identity of the terms of the promise.

Fedrick clearly cannot meet these requirements. Although the first two elements appear present in light of the evidence introduced in this case, the record cannot support a finding of elements 3 and 4: (a) Topco was dealing with Lowe as *its* customer and (b) the price quoted by Topco to Lowe and the price quoted by Lowe to Fedrick are manifestly dichotomous.

Section 90 (Revised) can, if interpreted in any other manner, give further concern in these situations. Under the provision of former Section 90, the possible defenses, if any, were clearly drawn between the promisor and promisee. Here, defenses that Topco may have asserted against Lowe cannot be determined in a trial only between Topco and Fedrick; nor can any defenses that Lowe may have vis-a-vis Fedrick be the subject of an inquiry by the District Court in a trial between Fedrick and Topco.

Fedrick's suggestion of the applicability of Section 90 (Revised) would turn manufacturers price listing literally on its head. An application of Fedrick's proposed interpretation of Section 90 (Revised) would import that no manufacturer could issue a price list to an independent dealer without the fear that some day (unbeknownst to him) the manufacturer might be called upon to answer to a third party for an independent dealer's price quotation to that third party, even though the price list may bear the legend in boldest possible type that "prices are subject to change without notice." So, too, manufacturers may be called upon, in a litigative posture, to answer for contractual terms that may differ vastly from those originally consummated between the manufacturer and the independent dealer.[9]

Finally, it appears, that the "justice" requirement of contract law and promissory estoppel can best be determined

8. Restatement (Second) of Contracts § 90 (Tent. Draft No. 2, 1965) Comment d; *See also*, Section 135 (Tent. Draft No. 3); Section 133 (Tent. Draft No. 4) Comment 3, Illus. 18.

9. In this case, among other things, the delivery terms quoted to Lowe were different than those quoted to Fedrick by Lowe. It would seem that Section 90 (Revised) should, if at all, only be applicable to third persons in complete privity with the terms of the promise made by the promisor and whose conduct of reliance is in answer to the *terms of the promise.*

where all parties are brought to answer for their own promises in the Superior Court of San Mateo County where this litigation properly belongs.

While we have reservations on the question of damages as awarded by the trial court, we need not now concern ourselves with a detailed analysis of the evidence on damages in light of our current disposition of this case.

The judgment is reversed.

MERRILL, Circuit Judge, with whom BROWNING, Circuit Judge, joins, concurring:

I concur in Judge Real's opinion for additional reasons.

California law controls this diversity case.[1] The California courts have recognized the principles of the original section 90 in holding that when a contractor (promisee), in submitting a construction bid, relies upon the offer of a subcontractor (promisor) to perform part of the work, that reliance makes the subcontractor's offer irrevocable, *see* Drennan v. Star Paving Co., 51 Cal.2d 409, 333 P.2d 757 (1958), at least for a reasonable time, *see* H. W. Stanfield Co. v. Robert McMullan & Son, Inc., 14 Cal. App.3d 848, 92 Cal.Rptr. 669 (1971).

So far, however, the California courts have been cautious in applying the principle of section 90 to third party beneficiaries. Where third parties have been permitted to assert rights flowing from a promise, the third party has been either an alter ego of the promisee, *see* Aronowicz v. Nalley's, Inc., 30 Cal.App. 3d 27, 106 Cal.Rptr. 424 (1973), or the recipient of substantially the same promise as was made by the promisor with knowledge that the promisee would pass the promise along to a third party. *See* Burgess v. California Mut. Bldg.

& Loan Ass'n, 210 Cal. 180, 186–187, 189, 290 P. 1029, 1031, 1032 (1930); Peterson Tractor Co. v. Orlando's Snack-Mobile Corp., 270 Cal.App.2d 787, 790–791, 76 Cal.Rptr. 221, 224 (1969). Moreover, in applying the principles of revised section 90 and extending the rules of promissory estoppel to third parties the California courts in my judgment would construe the revised section in a way consistent with analogous rules applicable to contracts for ordinary consideration. *See* Cal.Civ.Code § 1559 (West 1954); Restatement (Second) of Contracts §§ 135, 147 (Tent. Draft No. 3, 1967), 133 (Tent.Draft No. 4, 1968). Thus I believe that they would hold that only when a promisor knows that a third party may reasonably rely on his offer, and only when the third party so relies, may the third party enforce the promise, other requisites being satisfied.

In limiting the beneficiaries who may enforce a promise, California courts in my view would require that the promisor intend his offer to reach the third party without undergoing change en route; that it must be the offer of the promisor and not some intervening elaboration or modification on which the third party relies. If the promise has, with the promisor's knowledge, prompted the promisee to make his own more comprehensive or simply different promise to the third party, the third party could not claim to be entitled to enforce the promisor's offer. *Cf.* Restatement (Second) of Contracts § 133, comment e & illus. 16, 18 (Tent.Draft No. 4, 1968). Courts of California have so held in the case of contracts supported by ordinary consideration. *See* Southern California Acoustics Co. v. C. V. Holder, Inc., 71 Cal.2d 719, 727–728, 79 Cal.Rptr. 319, 326, 456 P.2d 975, 982 (1969); Neptune

1. The result would be the same should California, faced with a choice of law problem, choose to apply the law of Nevada, where performance of the promise to supply equipment would make itself felt. Nevada law is consistent with that of California on the general scope of the original Section 90, *see* American Sav. & Loan Ass'n v. Stanton-Cu-
dahy Lumber Co., 85 Nev. 350, 455 P.2d 39 (1969), and permits a third party, intended by a promisor to be a beneficiary of an offer, to recover from the promisor, *see* Lear v. Bishop, 86 Nev. 709, 476 P.2d 18 (1970). The Nevada courts would accord weight to California decisions in areas where Nevada law is yet unclear.

Gunite Co. v. Monroe Enterprises, Inc., 229 Cal.App.2d 439, 40 Cal.Rptr. 367 (1964).

Whatever the result might be had Topco known in making its offer to Lowe that Lowe would merely repeat the offer to a contractor without offering to perform other duties and without changing the terms of Topco's offer, this is not such a case. Here Topco had no reason to believe that Lowe would submit an offer identical to that made by Topco. In fact Lowe not only changed the terms on which equipment for stations 7 and 9 was offered but also bid on an additional pumping station.

Topco, then, did not intend or reasonably expect that Fedrick would rely on the promise Topco made to Lowe. Accordingly, in my judgment, California would not extend the promissory estoppel principles of section 90 to Fedrick.

As Judge Real has indicated, this does not necessarily leave Fedrick without remedy. Assuming promises enforceable by the promisee under section 90 to have been made, Fedrick may well have a claim against Lowe and Lowe may well have a claim against Topco, with the extent of recovery by Fedrick and Lowe depending on the specifics of the promises made to them.