BERKELEY UNIFIED SCHOOL DIS-
TRICT OF ALAMEDA COUNTY, State
of CALIFORNIA, a public corporation,
Plaintiff,

v.

JAMES I. BARNES CONSTRUCTION
COMPANY, a co-partnership,
et al., Defendants.

No. 30818.

United States District Court
N. D. California, S. D.
Sept. 7, 1954.

J. F. Coakley, Dist. Atty. of Alameda
County, Frank D. Parker, Asst. Dist.
Atty., Richard J. Moore, Asst. Dist.
Atty., Oakland, for plaintiff.

Weinmann, Rode, Burnhill & Moffitt,
Clifford Burnhill, Oakland, Cal., for de-
fendants.

ROCHE, Chief Judge.

Plaintiff, Berkeley Unified School Dis-
trict of Alameda County (hereafter
called the School District) has brought
this action against James I. Barnes Con-
struction Co. (hereafter called Barnes)
to recover damages for breach of an al-
leged contract to do school construction
work, and against Seaboard Surety Com-
pany on its bid bond in the amount of
$25,000.

The School District published a notice
inviting bids for the construction of two
school buildings. Barnes first learned
of the invitation to bid June 2, 1950.
The various subcontractors' bids which
had to be in, and tabulated before Barnes
could bid on the proposal began arriving
at about 9:30 or 10:00 o'clock on June 14,
1950, the very day the bid was due, and
continued until the last fifteen minutes
before Barnes put its bid in.[1]

As soon as completed the figures were
telephoned to an employee who actually
presented the bid. The telephoning was

1. Subcontractors generally wait as long as
possible before placing their bids with a
contractor in order to prevent the con-
tractor from having the time in which to
obtain a lower bid from some other sub-
contractor.

completed at 7:45 p.m. allowing no opportunity to recheck the figures. Soon after the bids were submitted they were opened, and at 9 o'clock it was realized by Barnes that a great discrepancy existed between its bid and the next highest bid, approximately $150,000.

Realizing that an error might have been made, work was begun on the morning of June 15th to check through the figures as it had been too late to do so the previous night. This check revealed that Barnes had failed to include the amount estimated to be the cost of the plumbing work, approximately $86,500.

Immediately upon discovering this error, Barnes home office and then the architects were told what had happened. They advised that the district attorney be notified, which was done. Dr. Nelson, Superintendent of the Berkeley Schools was also contacted, but since he was not in an appointment was scheduled for June 16th at 11 a. m. At this meeting Dr. Nelson was told of the mistake and was given an opportunity to look over the work sheets and documents which had been used by Barnes in preparing its bid, and which Barnes felt would indicate how the error was made. Barnes expressed willingness to cooperate in any way, and stated that it would proceed with the contract if the omitted amount would be added to its bid.

Dr. Nelson refused to look over the work sheets and other documents. The School District refused to allow the contractor's request to add the plumbing estimate to its bid, and although aware of the error made in the bid, accepted it as the lowest bid received from a responsible bidder on the basis that this bid was an irrevocable offer.

The evidence produced at the trial, particularly the facts and circumstances under which Barnes submitted its bid to plaintiff are sufficient to show that Barnes made an honest error in failing to include in its bid the amount estimated for the plumbing. The record also reveals that Barnes acted in utmost good faith in the preparation of its bid, and continued to so act after determining its error.

It is true that in the usual case the contractor is bound by his bid, and the board's acceptance constitutes a binding contract. However, where as in this case, an honest error was made in computing the amount of the bid, and the School Board actually had knowledge before accepting the bid that a clerical error had been made, it would be unfair to allow the School Board to take advantage of the contractor's mistake. M. F. Kemper Constr. Co. v. City of Los Angeles, 37 Cal.2d 696, 235 P.2d. 7, 11.

Plaintiff maintains that even if an honest error had been made, it nevertheless is entitled to recover damages under the law as stated in the Kemper case, supra. The basis of this contention is that the Kemper case states as one of the prerequisites to allowing the contractor relief that plaintiff be placed in statu quo. Where plaintiff is in a position to accept the second lowest bid this prerequisite is met. Plaintiff claims, however, that as a matter of law it was unable to accept the second lowest bid, that therefore readvertising was necessary, and that on this second call for bids the lowest bid was far in excess of the second lowest bid on the first call.[2]

Plaintiff wishes to recover $131,200, the difference between the second lowest bid on the first call, and the lowest bid on the second call.

To support its position plaintiff cites Education Code, § 18051. As far as pertinent this section reads as follows:

"The governing board of any school district shall let any contracts involving an expenditure of more than one thousand dollars ($1,000) for work to be done * * * to the lowest responsible bidder who shall

---

**2.** Barnes bid on the first
call for bids ............$1,377,700.00
Second lowest bid on
the first call for bids ....$1,512,900.00

Lowest bid on the second call for bids ......$1,644.100.00

give such security as the board requires, or else reject all bids. * * * "

Plaintiff's suggested interpretation of this section is, that taking the view that Barnes was the lowest responsible bidder, the board was required to accept Barnes' bid or reject all bids. If the Barnes Company was the lowest responsible bidder this contention is correct.

In the Kemper case, supra, the contract was let to the second highest bidder when the contractor notified the Board, that he had made an honest error in his submitted bid. The court in discussing this, states:

"There is no reason for denying relief on the ground that the city cannot be restored to status quo. It had ample time in which to award the contract without readvertising, the contract was actually awarded to the next lowest bidder, and the city will not be heard to complain that it cannot be placed in statu quo because it will not have the benefit of an inequitable bargain."

The Charter of the City of Los Angeles, Section 386(f) St.1947, page 3542, provides that the contract be let to the "lowest and best responsible bidder furnishing satisfactory security for its performance." The City of Los Angeles was thus faced with exactly the same problem in the Kemper case as was plaintiff in the instant case.[3]

■ When defendant bidder went on record to the effect that he would not perform he lost status as a responsible bidder. Surely if defendant bidder had refused without excuse to enter into a contract with the School District, plaintiff would have been entitled to recover all damages suffered. But the very fact that defendant would have been liable to pay damages would have prevented Barnes from being considered a responsible bidder. Certainly the School Board has the power to refuse a bid where it is made by a non-responsible bidder and

award the contract to the next lowest responsible bidder. Raymond v. Fresno City Unified School District, 123 Cal.App. 2d 626, 267 P.2d 69.

■ It would be inequitable to allow plaintiff to recover damages in this case in view of the fact that damages sustained resulted from plaintiff's choice of an alternative method, viz., readvertising instead of accepting the second lowest bid.

The Kemper case, supra, also makes it clear that the same rules as apply to the first cause of action apply to the second cause of action alleged herein against the Seaboard Surety Company. Therefore the bid bond is hereby exonerated.

In accordance with the foregoing

It Is Ordered that there be entered herein, upon findings of fact and conclusions of law, judgment in favor of the defendants, James I. Barnes Construction Company, a co-partnership, et al., and that the respective parties pay their own costs.

3. This problem was resolved by awarding the contract to the second lowest bidder and proceeding against the defaulting defendant for the damages suffered.