[L. A. No. 25739.  In Bank.  July 1, 1960.]

ELSINORE UNION ELEMENTARY SCHOOL DISTRICT
OF RIVERSIDE COUNTY, Respondent, v. E. J. KAS-
TORFF et al., Appellants.

Wallace & Wallace, W. W. Wallace and A. W. Wallace for Appellants.

Ray T. Sullivan, Jr., County Counsel, and James H. Angell, Assistant County Counsel, for Respondent.

SCHAUER, J.—Defendants, who are a building contractor and his surety, appeal from an adverse judgment in this ac-

tion by plaintiff school district to recover damages allegedly resulting when defendant Kastorff, the contractor, refused to execute a building contract pursuant to his previously submitted bid to make certain additions to plaintiff's school buildings. We have concluded that because of an honest clerical error in the bid and defendant's subsequent prompt rescission he was not obliged to execute the contract, and that the judgment should therefore be reversed.

Pursuant to plaintiff's call for bids, defendant Kastorff secured a copy of the plans and specifications of the proposed additions to plaintiff's school buildings and proceeded to prepare a bid to be submitted by the deadline hour of 8 p. m., August 12, 1952, at Elsinore, California. Kastorff testified that in preparing his bid he employed work sheets upon which he entered bids of various subcontractors for such portions of the work as they were to do, and that to reach the final total of his own bid for the work he carried into the right hand column of the work sheets the amounts of the respective sub bids which he intended to accept and then added those amounts to the cost of the work which he would do himself rather than through a subcontractor; that there is "a custom among subcontractors, in bidding on jobs such as this, to delay giving . . . their bids until the very last moment"; that the first sub bid for plumbing was in the amount of $9,285 and he had received it "the afternoon of the bid-opening," but later that afternoon when "the time was drawing close for me to get my bids together and get over to Elsinore (from his home in San Juan Capistrano) he received a $6,500 bid for the plumbing. Erroneously thinking he had entered the $9,285 plumbing bid in his total column and had included that sum in his total bid and realizing that the second plumbing bid was nearly $3,000 less than the first, Kastorff then deducted $3,000 from the total amount of his bid and entered the resulting total of $89,994 on the bid form as his bid for the school construction. Thus the total included no allowance whatsoever for the plumbing work.

Kastorff then proceeded to Elsinore and deposited his bid with plaintiff. When the bids were opened shortly after 8 p. m. that evening, it was discovered that of the five bids submitted that of Kastorff was some $11,306 less than the next lowest bid. The school superintendent and the four school board members present thereupon asked Kastorff whether he was sure his figures were correct, Kastorff stepped out into the

hall to check with the person who had assisted in doing the clerical work on the bid, and a few minutes later returned and stated that the figures were correct. He testified that he did not have his work sheets or other papers with him to check against at the time. The board thereupon, on August 12, 1952, voted to award Kastorff the contract.

The next morning Kastorff checked his work sheets and promptly discovered his error. He immediately drove to the Los Angeles office of the firm of architects which had prepared the plans and specifications for plaintiff, and there saw Mr. Rendon. Mr. Rendon testified that Kastorff "had his maps and estimate work-sheets of the project, and indicated to me that he had failed to carry across the amount of dollars for the plumbing work. It was on the sheet, but not in the total sheet. We examined that evidence, and in our opinion we felt that he had made a clerical error in compiling his bill. . . . In other words, he had put down a figure, but didn't carry it out to the 'total' column when he totaled his column to make up his bid. . . . He exhibited . . . at that time . . . his work-sheets from which he had made up his bid." That same morning (August 13) Rendon telephoned the school superintendent and informed him of the error and of its nature and that Kastorff asked to be released from his bid. On August 14 Kastorff wrote a letter to the school board explaining his error and again requesting that he be permitted to withdraw his bid. On August 15, after receiving Kastorff's letter, the board held a special meeting and voted not to grant his request. Thereafter, on August 28, *written notification* was given to Kastorff of award of the contract to him.[1] Subsequently plaintiff submitted to Kastorff a contract to be signed in accordance with his bid, and on September 8, 1952, Kastorff returned the contract to plaintiff with a letter again explaining his error and asked the board to reconsider his request for withdrawal of his bid.

Plaintiff thereafter received additional bids to do the subject construction; let the contract to the lowest bidder, in the amount of $102,900; and brought this action seeking to recover from Kastorff the $12,906 difference between that

[1]On the bid form, provided by plaintiff, the bidder agreed "that if he is notified of the acceptance of the proposal within forty-five (45) days from the time set for the opening of bids, he will execute and deliver to you within five (5) days after having received *written notification* a contract as called for in the 'Notice to Contractors.' " (Italics added.)

amount and the amount Kastorff had bid.[2] Recovery of $4,499.60 is also sought against Kastorff's surety under the terms of the bond posted with his bid.

Defendants in their answer to the complaint pleaded, among other things, that Kastorff had made an honest error in compiling his bid; that "he thought he was bidding, and intended to bid, $9500.00 more, making a total of $99,494.00 as his bid"; that upon discovering his error he had promptly notified plaintiff and rescinded the $89,994 bid. The trial court found that it was true that Kastorff made up a bid sheet, which was introduced in evidence; that the subcontractor's bids thereupon indicated were those received by Kastorff; that he "had 16 subcontracting bids to ascertain from 31 which were submitted"; and that Kastorff had neglected to carry over from the left hand column on the bid sheet to the right hand column on the sheet a portion of the plumbing (and heating) subcontractor's bid. Despite the uncontradicted evidence related hereinabove, including that of plaintiff's architect and of its school superintendent, both of whom testified as plaintiff's witnesses, the court further found, however, that "it is not true that the right hand column of figures was totaled for the purpose of arriving at the total bid to be submitted by E. J. Kastorff . . . It cannot be ascertained from the evidence for what purpose the total of the right hand column of figures on the bid sheet was used nor can it be ascertained from the evidence for what purpose the three bid sheets were used in arriving at the total bid." And although finding that "on or about August 15, 1952," plaintiff received Kastorff's letter of August 14 explaining that he "made an error of omitting from my bid the item of Plumbing," the court also found that "It is not true that plaintiff knew at any time that defendant Kastorff's bid was intended to be other than $89,994.00 . . . It is not true that the plaintiff knew at the time it requested the execution of the contract by defendant Kastorff that he had withdrawn his bid because of an honest error in the compilation thereof. It is not true that plaintiff had notice of an error in the compilation of the bid by defendant Kastorff and tried nevertheless to take advantage of defendant Kastorff by forcing him to enter a contract on the basis

[2]Plaintiff's original published call for bids contained the following statement: "No Bidder may withdraw his bid for a period of forty-five (45) days after the date set for the opening thereof." Whether upon Kastorff's rescission for good cause prior to expiration of the 45 day period plaintiff could have accepted the next lowest bid is not an issue before us.

of a bid he had withdrawn. . . . It is not true that it would be either inequitable or unjust to require defendant Kastorff to perform the contract awarded to him for the sum of $89,994.00, and it is not true that he actually intended to bid for said work the sum of $99,494.00.''[3]  Judgment was given for plaintiff in the amounts sought, and this appeal by defendants followed.

In reliance upon *M. F. Kemper Const. Co.* v. *City of Los Angeles* (1951), 37 Cal.2d 696 [235 P.2d 7], and *Lemoge Electric* v. *County of San Mateo* (1956), 46 Cal.2d 659, 662, 664 [1a, 1b, 2, 3] [297 P.2d 638], defendants urge that where, as defendants claim is the situation here, a contractor makes a clerical error in computing a bid on a public work he is entitled to rescind.

In the Kemper case one item on a work sheet in the amount of $301,769 was inadvertently omitted by the contractor from the final tabulation sheet and was overlooked in computing the total amount of a bid to do certain construction work for the defendant city.  The error was caused by the fact that the men preparing the bid were exhausted after working long hours under pressure.  When the bids were opened it was found that plaintiff's bid was $780,305, and the next lowest bid was $1,049,592.  Plaintiff discovered its error several hours later and immediately notified a member of defendant's board of public works of its mistake in omitting one item while preparing the final accumulation of figures for its bid.  Two days later it explained its mistake to the board and withdrew its bid.  A few days later it submitted to the board evidence which showed the unintentional omission of the $301,769 item.  The board nevertheless passed a resolution accepting plaintiff's erroneous bid of $780,305, and plaintiff refused to enter into a written contract at that figure. The board then awarded the contract to the next lowest bidder, the city demanded forfeiture of plaintiff's bid bond, and plaintiff brought action to cancel its bid and obtain discharge of the bond.  The trial court found that the bid had been submitted as the result of an excusable and honest mistake of a material and fundamental character, that plaintiff

[3]Other findings are that Kastorff ''in the company of his wife and another couple left San Juan Capistrano for Elsinore . . . at 6:00 P.M. on August 12, 1952, a distance of 34 miles by way of California State Highway . . . Kastorff had ample time and opportunity after receiving his last subcontractor's bid to extend the figures on his bid sheet from one column to the other, to check and recheck his bid sheet figures and to take his papers to Elsinore and to check them there prior to close of receipt of bids at 8:00 P.M.''

company had not been negligent in preparing the proposal, that it had acted promptly to notify the board of the mistake and to rescind the bid, and that the board had accepted the bid with knowledge of the error. The court further found and concluded that it would be unconscionable to require the company to perform for the amount of the bid, that no intervening rights had accrued, and that the city had suffered no damage or prejudice.

On appeal by the city this court affirmed, stating the following applicable rules (pp. 700-703 of 37 Cal.2d) : "[1] Once opened and declared, the company's bid was in the nature of an irrevocable option, a contract right of which the city could not be deprived without its consent unless the requirements for rescission were satisfied. [Citations.] . . . [2] . . . the city had actual notice of the error in the estimates before it attempted to accept the bid, and knowledge by one party that the other is acting under mistake is treated as equivalent to mutual mistake for purposes of rescission. [Citations.] [3] Relief from mistaken bids is consistently allowed where one party knows or has reason to know of the other's error and the requirements for rescission are fulfilled. [Citations.]

"[4] Rescission may be had for mistake of fact if the mistake is material to the contract and was not the result of neglect of a legal duty, if enforcement of the contract as made would be unconscionable, and if the other party can be placed in statu quo. [Citations.] In addition, the party seeking relief must give prompt notice of his election to rescind and must restore or offer to restore to the other party everything of value which he has received under the contract. [Citations.]

"[5] Omission of the $301,769 item from the company's bid was, of course, a material mistake. . . . [E]ven if we assume that the error was due to some carelessness, it does not follow that the company is without remedy. Civil Code section 1577, which defines mistake of fact for which relief may be allowed, describes it as one not caused by 'the neglect of a legal duty' on the part of the person making the mistake. [6] It has been recognized numerous times that not all carelessness constitutes a 'neglect of legal duty' within the meaning of the section. [Citations.] On facts very similar to those in the present case, courts of other jurisdictions have stated that there was no culpable negligence and have granted relief from erroneous bids. [Citations.] [7] The type of error here involved is one which will sometimes occur in the conduct of reasonable and cautious businessmen, and, under all the cir-

cumstances, we cannot say as a matter of law that it constituted a neglect of legal duty such as would bar the right to equitable relief.

"[8] The evidence clearly supports the conclusion that it would be unconscionable to hold the company to its bid at the mistaken figure. The city had knowledge before the bid was accepted that the company had made a clerical error which resulted in the omission of an item amounting to nearly one third of the amount intended to be bid, and, under all the circumstances, it appears that it would be unjust and unfair to permit the city to take advantage of the company's mistake. [9, 10] There is no reason for denying relief on the ground that the city cannot be restored to status quo. It had ample time in which to award the contract without readvertising, the contract was actually awarded to the next lowest bidder, and the city will not be heard to complain that it cannot be placed in statu quo because it will not have the benefit of an inequitable bargain. [Citations.] [11] Finally, the company gave notice promptly upon discovering the facts entitling it to rescind, and no offer of restoration was necessary because it had received nothing of value which it could restore. [Citation.] We are satisfied that all the requirements for rescission have been met."

In the Lemoge case (*Lemoge Electric* v. *County of San Mateo* (1956), *supra*, 46 Cal.2d 659, 662, 664 [1a, 1b, 2, 3]), the facts were similar to those in Kemper, except that plaintiff Lemoge did not attempt to rescind but instead, after discovering and informing defendant of inadvertent clerical error in the bid, entered into a formal contract with defendant on the terms specified in the erroneous bid, performed the required work, and then sued for reformation. Although this court affirmed the trial court's determination that plaintiff was not, under the circumstances, entitled to have the contract reformed, we also reaffirmed the rule that "Once opened and declared, plaintiff's bid was in the nature of an irrevocable option, a contract right of which defendant could not be deprived without its consent unless the requirements for rescission were satisfied. [Citation.] Plaintiff then had the right to rescind, and it could have done so without incurring any liability on its bond." (See also *Brunzell Const. Co.* v. *G. J. Weisbrod, Inc.* (1955), 134 Cal.App.2d 278, 286-287 [1, 2] [285 P.2d 989] ; *Klose* v. *Sequoia Union High School Dist.* (1953), 118 Cal.App.2d 636, 641-642 [5] [258 P.2d 515].)

The rules stated in the Kemper and Lemoge cases would

appear to entitle defendant to relief here, were it not for the findings of the trial court adverse to defendant. However, certain of such findings are clearly not supported by the evidence and others are immaterial to the point at issue. ■■ The finding that it is not true that the right hand column of figures on the bid sheet was totaled for the purpose of arriving at the total bid, and that it cannot be ascertained from the evidence for what purpose either the bid sheets or the right hand column total thereon were used in arriving at the total bid, is without evidentiary support in the face of the work sheets which were introduced in evidence and of the uncontradicted testimony not alone of defendant Kastorff, but also of plaintiff's own architect and witness Rendon, explaining the purpose of the work sheets and the nature of the error which had been made. We have examined such sheets, and they plainly show the entry of the sums of $9,285 and of $6,500 in the left hand columns as the two plumbing sub bids which were received by defendant, and the omission from the right hand totals column of any sum whatever for plumbing.

■■ The same is true of the finding that although "on or about August 15" plaintiff received Kastorff's letter of August 14 explaining the error in his bid, it was not true that plaintiff knew at any time that the bid was intended to be other than as submitted. Again, it was shown by the testimony of plaintiff's architect, its school superintendent, and one of its school board members, all produced as plaintiff's witnesses, that the board was informed of the error and despite such information voted at its special meeting of August 15 not to grant defendant's request to withdraw his bid.

■■ Further, we are persuaded that the trial court's view, as expressed in the finding set forth in the margin,[4] that "Kastorff had ample time and opportunity after receiving his last subcontractor's bid" to complete and check his final bid, does not convict Kastorff of that "neglect of legal duty" which would preclude his being relieved from the inadvertent clerical error of omitting from his bid the cost of the plumbing. (See Civ. Code, § 1577; *M. F. Kemper Const. Co.* v. *City of Los Angeles* (1951), *supra,* 37 Cal.2d 696, 702 [6].) Neither should he be denied relief from an unfair, inequitable, and unintended bargain simply because, in response to inquiry from the board when his bid was discovered to be much the lowest submitted, he informed the board, after checking with his clerical assistant, that the bid was correct. He did not have his

---

[4]See footnote 3, *supra.*

work sheets present to inspect at that time, he did thereafter inspect them at what would appear to have been the earliest practicable moment, and thereupon promptly notified plaintiff and rescinded his bid. Further, as shown in the margin,[5] Kastorff's bid agreement, as provided by plaintiff's own bid form, was to execute a formal written contract only after receiving written notification of acceptance of his bid, and such notice was not given to him until some two weeks following his rescission.

If the situations of the parties were reversed and plaintiff and Kastorff had even executed a formal written contract (by contrast with the preliminary bid offer and acceptance) calling for a fixed sum payment to Kastorff large enough to include a reasonable charge for plumbing but inadvertently through the *district's* clerical error omitting a mutually intended provision requiring Kastorff to furnish and install plumbing, we have no doubt but that the district would demand and expect reformation or rescission. In the case before us the district expected Kastorff to furnish and install plumbing; surely it must also have understood that he intended to, and that his bid did, include a charge for such plumbing. The omission of any such charge was as unexpected by the board as it was unintended by Kastorff. Under the circumstances the "bargain" for which the board presses (which action we, of course, assume to be impelled by advice of counsel and a strict concept of official duty) appears too sharp for law and equity to sustain.

Plaintiff suggests that in any event the amount of the plumbing bid omitted from the total was immaterial. The bid as submitted was in the sum of $89,994, and whether the sum for the omitted plumbing was $6,500 or $9,285 (the two sub bids), the omission of such a sum is plainly material to the total. In Lemoge (*Lemoge Electric* v. *County of San Mateo* (1956), *supra,* 46 Cal.2d 659, 661-662) the error which it was declared would have entitled plaintiff to rescind was the listing of the cost of certain materials as $104.52, rather than $10,452, in a total bid of $172,421. Thus the percentage of error here was larger than in Lemoge, and was plainly material.

The judgment is reversed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

---

[5]See footnote 1, *supra.*