Board of Edn. of Chillicothe City School District, Appellant, *v.* Sever-Williams Co., Inc., et al., Appellees.

[Cite as Bd. of Edn. v. Sever-Williams Co., 16 Ohio App. 2d 7.]

(No. 523—Decided July 26, 1968.)

*Mr. William W. Stanhope* and *Mr. Phil D. Butler,* for appellant.

*Messrs. McNamara & McNamara, Mr. Charles S. Hire* and *Mr. David L. Barrett,* for appellees.

GRAY, J. This cause is in this court on appeal on questions of law and fact from a judgment rendered by the Court of Common Pleas of Ross County, wherein that court granted a motion for a directed verdict at the conclusion of all the evidence, plaintiff's petition was dismissed and the prayer of the amended cross-petition was granted rescinding the bid and bid bond of defendant Sever-Williams Company, Inc.

A petition was filed by plaintiff alleging that it advertised for bids for the construction of a new high school which it proposed to have built.

The petition alleges that defendant Sever-Williams Company submitted a bid, consisting of a base bid of $1,242,000 with certain alternates. Defendant Sever-Williams Company, with the bid, submitted a bid bond in the sum of $137,000 with defendant Federal Insurance Company as surety thereon.

The petition alleges further that at a meeting of plaintiff board on June 20, 1961, the board accepted the bid of defendant Sever-Williams Company and awarded the construction contract to it; that defendant Sever-Williams Company failed and refused to enter into a contract with plaintiff in accordance with its bid; that defendant Sever-Williams Company refused to give a performance bond; and that defendant Sever-Williams Company notified plaintiff that it was withdrawing its bid and would not enter into a contract or execute and furnish a performance bond.

Plaintiff alleges further that it was necessary that it award the contract to the next lowest bidder and that the difference in the bid of defendant Sever-Williams Company and the contract price of the next lowest bidder was $141,500.

Plaintiff alleges further that the amount of damages exceeded the penalty of the bid bond; and that there is due

and owing to it from defendants the sum of $137,000 as a result of the damages suffered by it to the extent such damages were covered by the penal amount of the bond.

The petition prayed for damages in the sum of $137,000 jointly and severally from the two defendants.

A second amended answer and cross-petition of defendant Sever-Williams Company was filed. In this pleading defendant Sever-Williams Company admits that it submitted a base bid of $1,242,000, which bid through inadvertence and oversight contained a mistake in that an item of $145,000 was omitted.

Defendant Sever-Williams Company alleges also that when the bids were opened June 20, 1961, such defendant, noting a difference in its bid and the next lowest bid, reexamined its bid sheets and then discovered its error in the bid in that it omitted a $145,000 item, so that the base bid submitted was $1,242,000.

Defendant avers that during the meeting of plaintiff board it notified plaintiff of the mistake of $145,000 in its bid and that this defendant would not enter into a contract for the construction of the school for the sum of $1,242,000.

Defendant avers also that on June 21, 1961, defendant Sever-Williams Company sent plaintiff a telegram notifying plaintiff of the mistake.

Defendant Sever-Williams Company prays that the erroneous bid and bid bond submitted by it be ordered cancelled.

The facts developed at the trial of this matter show that the bids were opened in the school auditorium and that many people were present, including representatives of other bidders. When Mr. Puckett, representative of defendant Sever-Williams, learned of the amounts of the other bids he realized there must have been an error in the bid of his company. He immediately called the office of defendant Sever-Williams Company and upon re-examining the items of its bid discovered the omission of the $145,000 item. Mr. Puckett shortly thereafter told Mr. Cupp, the architect's representative, that an error had

been made in the bid defendant Sever-Williams Company submitted. Mr. Puckett and Mr. Cupp then discussed the error.

Mr. Puckett further testified that he and Mr. Cupp discussed the error in the presence of several people, who were members of the school board, on June 20, 1961. However, he did not appear before the board while it was in formal session on that day.

The bid of defendant Sever-Williams Company was accepted, and the contract was awarded to defendant Sever-Williams Company shortly after 1:05 p. m. on June 20, 1961.

On June 21, 1961, at 1:41 p. m. a telegram was sent plaintiff by defendant Sever-Williams Company, in which it is stated that on June 20 at approximately 2 p. m. defendant Sever-Williams Company notified the plaintiff that there was an error in the bid in the omission of an item in the amount of $145,000. Defendant withdrew its bid and requested plaintiff to disregard its bid in the determination of the low bid and in the award of the contract. Defendant Sever-Williams Company further stated that it would show plaintiff its bid sheets exhibiting the error in the bid.

On June 26, 1961, at 3:18 p. m. a telegram was sent by defendant Sever-Williams Company to the plaintiff to the attention of Paul Hydell, Superintendent of Schools, Chillicothe School District, that it had received a copy of resolution of plaintiff awarding contract to defendant Sever-Williams Company and that plaintiff was thereby informed that defendant Sever-Williams Company would not execute a contract on its bid submitted June 20, 1961.

At the regular meeting of plaintiff on June 27, 1961, a resolution of the board of directors of defendant Sever-Williams Company was presented to plaintiff stating in substance that defendant Sever-Williams Company would not enter into a contract with plaintiff based on bid submitted June 20, 1961, containing a mistake of $145,000.

The record further shows that defendant Sever-Williams Company had a net worth of approximately $130,000.

It was developed by the evidence that materialmen and subcontractors were late in submitting their figures and that the final tabulation of the bids was made on the morning of June 20, 1961.

The base bids as tabulated show the following figures:

| | |
|---|---|
| Knowlton, Inc. | $1,383,500. |
| Sever-Williams Co. | $1,242,000. |
| Weithman Brothers | $1,411,720. |

The bid was later awarded to Knowlton, Inc., for its base bid of $1,383,500.

The bid sheets of defendant Sever-Williams Company were introduced into evidence to exhibit the error in the bid.

Mr. Cupp, representative of McLaughlin and Keil, architects employed by plaintiff, testified as follows:

"Q. Can you tell us about what time the recess occurred in respect to the time the bids were opened? That is, how soon after the bids were opened did you have this occasion to talk with Mr. Puckett, according to your best recollection? A. The bids were read at twelve o'clock, and as I recall, it took somewhere between a half an hour, forty-five minutes, to read all the bids received. As soon as we could get into the Board Room, the board went into session, and I think it was probably about two o'clock when we got up and left the Board Room, and at that time I met Mr. Puckett—I don't recall if it was in the outer office or in the corridor—at which time he talked to me about his bid.

"Q. And was it at that time that he told you that he had made a mistake in his bid, in the approximate amount of $145,000.00?

"Mr. Stanhope: Object.

"Court: Overruled.

"A. He told me that he had checked his bid, checked with his office, and found out where his error was, and it was approximately $145,000.00, $140,000.00 that he had— an item that he told me he had omitted from his bid.

"Mr. Stanhope: Ask the answer be stricken.

"Court: Overruled.

"Q. Were you satisfied, Mr. Cupp, from your conver-

sation with Mr. Puckett that there was, in fact, a mistake in the Sever-Williams bid?

"Mr. Stanhope: Just a moment.

"A. I was satisfied with—

"Mr. Stanhope: Just a moment, Mr. Cupp.

"A. —his statement.

"Mr. Stanhope: Just a moment, Mr. Cupp. Would you read the question?

"(The question was read.)

"Mr. Stanhope: Object.

"Court: Overruled.

"A. I was satisfied with his statement.

"Mr. Stanhope: I ask that the answer be stricken.

"Court: Overruled.

"Q. Would you amplify that and tell us why you were satisfied, Mr. Cupp?

"Mr. Stanhope: I object to that, too.

"Court: Overruled.

"A. First, I suspected that there was an error in his bid because of the difference between his bid and that of the Knowlton Company, whom I know to be very low bidders. It didn't seen reasonable to me that there would be that much difference between the two bids. I was satisfied for another reason in that I have been acquainted with Mr. Puckett for nearly 20 years or more, approximately 20 years, and during those years working for the Sever-Williams Company, he has built many buildings that we have designed, and in all the years that I have dealt with him, I have never known him to lie to me or even to try to deceive me, which is something I cannot say for other contractors that we have dealt with to a great extent.

"Mr. Stanhope: I ask that the answer be stricken.

"Court: Overruled.

"A. (Continuing) I had complete confidence in his honesty.

"Mr. Stanhope: I ask that the answer be stricken.

"Court: Overruled.

"Q. When the meeting of the Board of Education resumed following your conversation with Mr. Puckett at the recess on June the 20th—

"A. June the 20th.

"Q. —1961, did you report to the board the substance of your conversation with Mr. Puckett?

"Mr. Stanhope: Object.

"Court: Overruled.

"A. Before, the board went into session again, I called a couple of the board members aside and told them of the statement that Mr. Puckett had made. After that the board went into session again and discussed his bid further.

"Mr. Stanhope: Ask that the answer be stricken.

"Court: Overruled.

"Q. And the fact that he had advised you of the mistake in his bid was a part of the discussion?

"Mr. Stanhope: Object.

"Court: Overruled.

"A. That was the main point of discussion.

"Q. The main of the discussion?"

We believe this testimony to be highly significant, and we attach great weight to it.

We are of the opinion that the trial court was correct in its judgment.

Research has turned up a plethora of cases to substantiate our position. The author of the annotation appearing in 52 A. L. R. 2d 792, at page 796, makes the following statement:

"In the typical situation here presented, so firmly has the rule favoring equitable relief against unilateral mistake become established that no case has been discovered in which it has not been granted, by way of rescission or similar or appropriate relief, where there is proof of a combination of circumstances establishing remediable mistake and timely communication of knowledge to and assertion of the right to relief against the other party."

In *State Highway Commission* v. *State Construction Co.* 203 Or. 414, 280 P. 2d 370, 52 A. L. R. 2d 779, the facts are similar to the case we presently have under consideration. The state of Oregon brought an action at law to recover the sum of $8,634.95 against the State Construction Company. Defendant answered plaintiff's petition and pleaded affirmative matters arising out of the case, which required

14

the interposition of a court of equity. Under the Oregon statute the action at law was stayed, and the case proceeded as a suit in equity. The Supreme Court of Oregon granted equitable relief to the defendant.

In one of the A. L. R. headnotes to that case, on page 781, it is stated:

"A loss or injury to the state constituting sufficient ground for denying equitable relief to a bidder for a public contract basing his bid on a substantial mistake of fact cannot be predicated on the gain to be derived by a forfeiture of the bidder's bond, or on the necessity of accepting a higher bid."

Apropos of the present circumstances, the author in 52 A. L. R. 2d 793 states:

" * * * Consequently 'acceptance' as used in most of the cases does not mean the formation of a contract as in the law of private contracts, but is simply descriptive of some act indicative of approval or award, with the intent of subsequently executing a formal contract."

The author further states, at page 803:

"Even where notice of the situation is given to a public body as offeree after acceptance of a bid but before a formal contract has been executed, several cases announce and apply the rule that where a bidder for a public contract makes a unilateral mistake in preparing his bid, which is otherwise remediable, he may have equitable relief by rescission or cancellation, or in the nature thereof, where the notice was reasonably prompt and the offeree has not altered its position so that relief would work a hardship upon it, and there are no other circumstances which would render it inequitaable to grant such relief."

We believe that the mistake of defendant was of so fundamental a character that the minds of the parties did not meet. The mistake of defendant was, under the circumstances, not the result of such culpable negligence as to bar defendant Sever-Williams Company redress. The contract was still executory, and plaintiff had not been prejudiced. *Connecticut* v. *F. H. McGraw & Co.*, 41 F. Supp. 369, 373.

The following rule from 2 Kent's Commentaries, Sec-

tion 477, is declared in 1 Story's Equity Jurisprudence (10th Ed.), Section 138 i:

"Mutual consent is requisite to the creation of the contract, and it becomes binding when a proposition is made on one side and accepted on the other; and, on the other hand, it is no contract if there be an error or mistake of a fact, or in circumstance, going to the essence of it. This is a clear principle of universal justice. *'Non videtur qui errant consentire.'* It is an equitable rule, declared by Mr. Kent, 'that he who errs is not considered as consenting.' In this case the appellee erred by what appears to be an excusable mistake."

In *Kutsche* v. *Ford,* 222 Mich. 442, 192 N. W. 714, the court, at page 450, said:

"* * * To place *in statu quo* does not mean that one shall profit out of the mistake of another. * * *"

To this statement may be added the observation made by the court in *Rushlight Automatic Sprinkler Co.* v. *Portland,* 189 Or. 194, at 245, 219 P. 2d 732:

"* * * To be denied the privilege of taking advantage of another's mistake is not to suffer damage. * * *"

Of the multitude of cases involving this proposition of law, we wish to cite the following:

*Union Free School Dist. No. 1* v. *Gumbs,* 191 N. Y. S. 2d 183; *Kemp* v. *United States,* 38 F. Supp. 568; 70 A. L. R. 2d 1375; *Bd. of Edn. of Floyd County* v. *Hooper* (Ky. Court of Appeals), 350 S. W. 2d 629.

The action taken by the trial court was not erroneous. Therefore, the judgment of that court is affirmed.

*Judgment affirmed.*

CARLISLE, P. J., and ABELE, J., concur.