**M. J. McGOUGH COMPANY, Plaintiff,**

v.

**JANE LAMB MEMORIAL HOSPITAL,**
**Defendant.**

**JANE LAMB MEMORIAL HOSPITAL,**
**Plaintiff,**

v.

**M. J. McGOUGH COMPANY and the**
**Continental Insurance Company,**
**Defendants.**

**Civ. Nos. 3777D, 3779D.**

United States District Court
S. D. Iowa,
Davenport Division.

July 14, 1969.

Edward N. Wehr, Davenport, Iowa, for M. J. McGough Co. and Continental Ins. Co.

Richard M. McMahon, Thomas F. Daley, Jr., and Monty E. Stratton, Davenport, Iowa, Richard W. Farwell, Clinton, Iowa, for Jane Lamb Memorial Hospital.

## MEMORANDUM OPINION

STEPHENSON, Chief Judge.

This action arises out of two separate cases filed on April 11, 1968, and consolidated for trial. The parties waived jury and the matter was tried by the Court on May 19, 1969. Only a limited amount of evidence was produced at trial due to the fact that the parties by their stipulations have shown that little dispute exists as to the facts. Jurisdiction exists by reason of diversity and requisite amount in controversy. 28 U.S.C.A. § 1332.

The controversy herein arises from the competitive bidding on a hospital improvement proposed by Jane Lamb Memorial Hospital, a nonprofit Iowa corporation. On or about January 2, 1968, the Hospital published an invitation for bids on this improvement. M. J. McGough Company, a Minnesota corporation, accepted said invitation and submitted a bid along with a bid bond from The Continental Insurance Company in the amount of $100,000. The bid of M. J. McGough was submitted shortly before the opening time of 2:00 p.m., on February 16, 1968. The bids were opened by the Chairman of the Board of Trustees of Jane Lamb Memorial Hospital, Mr. Clark Depue III, at 2:00 p.m., and recorded as follows:

| | |
|---|---|
| M. J. McGough Co., St. Paul | $1,957,000 |
| Knutson Construction Co., Minneapolis | 2,120,643 |
| Steenberg Construction Co., St. Paul | 2,185,000 |
| Rinderknecht Construction So., Cedar Rapids | 2,264,000 |
| O. Jorgenson & Sons Construction Co., Clinton | 2,322,064 |
| Lovering Construction Co., St. Paul | 2,326,380 |
| Universal Construction Co., Kansas City, Mo. | 2,500,000 |
| Ringland-Johnson-Crowley Co., Inc., Clinton | 2,557,837 |
| Priester Construction Co., Davenport | 2,611,000 |

These figures were relayed to Mr. J. H. McGough, President of M. J. McGough Company, by a representative present at the opening. Mr. McGough was immediately concerned over the ten percent (10%) difference between his low bid and the next lowest bid of Knutson Construction Company.[1] Feeling a serious mistake had been made in the compilation of his bid, therefore, Mr. McGough called his representative at the opening and instructed him to request that he be allowed to withdraw his bid. This request was transmitted to Mr. Depue at approximately 2:45 p.m. while the Board was still analyzing the bids received. Shortly thereafter Mr. McGough spoke with Mr. Depue by telephone and Mr. Depue requested a letter explaining the circumstances of the mistake and a written request to withdraw. Mr. McGough and his staff then began

---

1. By his testimony at trial Mr. McGough explained that Knutson Construction Company was known in the trade as a notoriously low bidder.

484

checking the papers relating to this bid and discovered an error in the amount of $199,800. The circumstances surrounding the error were set out in a letter dated February 16, 1968, directed to Milton Holmgrain, the hospital administrator. In the letter Mr. McGough offered to "submit to you immediately all of our records relating to this project for verification of this error." In spite of this the Board of Trustees, without further communication with M. J. McGough Company, at its meeting on February 22, 1968, passed a "Resolution of Intent" to the effect that the Board intended to accept the bid of M. J. McGough Company subject to obtaining the approval of the Division of Hospital Services of the Iowa State Department of Health and the U. S. Public Health Service.

Thereafter, the parties communicated a number of times by telephone, letter and in person on the matter. At all times M. J. McGough Company sought the withdrawal of its bid and offered to produce its papers to verify the error in its bid. Likewise, the representatives of Jane Lamb Memorial Hospital continuously sought to hold M. J. McGough Company to its original bid. Upon the refusal of M. J. McGough Company to execute the contract and other necessary documents, however, the contract was awarded to the next lowest bidder, Knutson Construction Company.

On April 11, 1968, M. J. McGough Company filed a complaint in this Court seeking to have its bid declared rescinded and the surety, The Continental Insurance Company, be released from liabilty on the bond. On that same date Jane Lamb Memorial Hospital filed a complaint in this court against M. J. McGough Company and The Continental Insurance Company seeking damages in the amount of $190,156.58.[2] These claims are consolidated for decision herein.

The circumstances surrounding the mistake in the bid of M. J. McGough Company are not seriously disputed. The majority of the subcontractor bids used in computing the bid of M. J. McGough Company were received on February 16, 1968, the day of the opening. It is the accepted practice and custom among subcontractors to refrain from submitting their final sub-bids until the day of the opening and, then, only within a matter of hours before the actual opening of bids.[3] The final sub-bids were received by telephone in the offices of M. J. McGough Company in St. Paul, Minnesota, between 10:00 a.m. and 1:00 p.m. on February 16, 1968. The sub-bids were recorded as they were phoned in on a slip of paper. Mr. McGough received the sub-bid of Artcraft Interiors, Inc., during this period of frenzied activity, and although he correctly recorded it on the slip of paper as $222,000, he verbally called it to an employee who recorded it as $22,200. This erroneous figure was, subsequently, transposed by the employee on the recapitulation sheet and used in computing the final bid of M. J. McGough Company. It was not until after the opening of bids, when Mr. McGough sought to check their figures, that the mistake was discovered.

2. Jane Lamb Memorial Hospital arrived at this amount by adding the difference ($179,393) between the M. J. McGough Company bid and the Knutson Construction Company bid plus the amount of increased architect's fees ($10,763.58), which are based on a percentage of the total price.

3. This custom is widely recognized in the cases dealing with bidding situations. Kenneth E. Curran, Inc. v. State, 106 N.H. 558, 215 A.2d 702, at 704 (1965); James T. Taylor and Son, Inc. v. Arlington Ind. School Dist., 160 Tex. 617, 335 S.W.2d 371, at 375–6 (1960); Elsinore Union Elementary School Dist., etc. v. Kastorff, 54 Cal.2d 380, 6 Cal.Rptr. 1, 353 P.2d 713, at 714 (1960). The reasoning for this custom was stated in Berkeley Unified School Dist. of Alameda County v. James I. Barnes Const. Co., 123 F.Supp. 924, footnote 1 (N.D. Cal.1954), as follows:

"Subcontractors generally wait as long as possible before placing their bids with a contractor in order to prevent the contractor from having the time in which to obtain a lower bid from some other subcontractor."

By the overwhelming weight of authority a contractor may be relieved from a unilateral mistake in his bid by rescission under the proper circumstances. See generally, Annot., 52 A.L.R.2d 792 (1957).[4] The prerequisites for obtaining such relief are: (1) the mistake is of such consequence that enforcement would be unconscionable; (2) the mistake must relate to the substance of the consideration; (3) the mistake must have occurred regardless of the exercise of ordinary care; (4) it must be possible to place the other party in status quo. See e.g., Peerless Casualty Co. v. Housing Authority, 228 F.2d 376 (5th Cir. 1955); Mount St. Mary's College v. Aetna Casualty & Surety Co., 233 F. Supp. 787 (D.Md.1964), aff'd per curiam, 344 F.2d 331 (4th Cir. 1965); Smith & Lowe Const. Co. v. Herrera, 79 N.M. 239, 442 P.2d 197 (1968); Kenneth E. Curran, Inc. v. State, 106 N.H. 558, 215 A.2d 702 (1965); Bd. of Water & Sewer Commissioners of Mobile v. Spriggs, 274 Ala. 155, 146 So.2d 872 (1962); City of Baltimore v. DeLuca-Davis Const. Co., 210 Md. 518, 124 A.2d 557 (1956); State Highway Commission v. State Const. Co., 203 Or. 414, 280 P.2d 370, 52 A.L.R.2d 779 (1955); School Dist. of Scottsbluff v. Olson Const. Co., 153 Neb. 451, 45 N.W.2d 164 (1950); Kutsche v. Ford, 222 Mich. 442, 192 N.W. 714 (1923); St. Nicholas Church v. Kropp, 135 Minn. 115, 160 N.W. 500, L.R.A.1917D, 741 (1916). It is also generally required that the bidder give prompt notification of the mistake and his intention to withdraw. Bd. of Ed. of Chillicothe City School District v. Sever-Williams, 16 Ohio App.2d 7, 240 N.E.2d 880 (1968); Bd. of Ed. of Floyd County v. Hooper, 350 S.W.2d 629 (Ky.1961); Elsinore Union Elementary School Dist. etc. v. Kastorff, 54 Cal.2d 380, 6 Cal.Rptr. 1, 353 P.2d 713 (1960); James T. Taylor and Son, Inc., v. Arlington Ind. School Dist., 160 Tex. 617, 335 S.W.2d 371 (1960); Puget Sound Painters, Inc. v. State, 45 Wash. 2d 819, 278 P.2d 302 (1954); M. F. Kemper Const. Co. v. City of Los Angeles, 37 Cal.2d 696, 235 P.2d 7 (1951).

Although there is no decision on this point in Iowa it would appear by the language in Amodeo Co. v. Woodward, 192 Iowa 535, 185 N.W. 94 (1921), that the Iowa courts would follow the reasoning of the majority. In Amodeo, supra at 537, 185 N.W. at 94–95, the Iowa Supreme Court stated as follows:

"But the matter was discussed as to whether there was not a mistake, and as to whether plaintiff could go on under his bid. This was before it was accepted. After discovering the provision of the notice, and before it was accepted by the council, plaintiff made no effort to correct his bid, or to withdraw it, or to withdraw the check. He gave the council to understand that he would go on with it, and thereafter his bid was accepted. Had plaintiff withdrawn his bid, the council would, no doubt, have accepted the next lowest bid; at least, they could have done so."

Later in the opinion, supra at 541, 185 N. W. at 96, it was further pointed out that:

"As it is, the city has lost a considerable sum by reletting at a higher price because of plaintiff's failure to contract, and because of his failure to withdraw his bid and check after he discovered the alleged mistake, and before his bid was accepted. Had he done the latter, he would have protected himself and the city as well."

It might be noted further that the suit in Amodeo was an action at law, rather than in equity to rescind. Some cases make the distinction as to the rights of the contractor whether legal or equitable principles control in the particular action. See, e. g., Hotel China & Glassware

4. *Contra*: see Hedden v. Northampton Area Joint School Authority, 396 Pa. 328, 152 A.2d 463 (1959); Colella, Inc. v. County of Allegheny, 391 Pa. 103, 137 A.2d 265 (1958). The reasoning of these courts is that the integrity of the bidding system must be protected and to allow a withdrawal or rescission of a bid would "open wide the door to fraud and collusion * * *." Colella, Inc. v. County of Allegheny, 137 A.2d at 267.

**486**

Co. v. Bd. of Public Instruction, 130 So. 2d 78 (Fla.App.1961); Baltimore v. De-Luca-Davis Const. Co., *supra*. This, of course, is not a problem in Federal Courts where law and equity procedures have been combined. Rule 1, F.R.Civ.P.; Mount St. Mary's College v. Aetna Casualty & Surety Co., *supra* 233 F.Supp. at 796.

 Applying the criteria for rescission for a unilateral mistake to the circumstances in this case, it is clear that M. J. McGough Company and his surety, The Continental Insurance Company, are entitled to equitable relief. The notification of mistake was promptly made, and Mr. McGough made every possible effort to explain the circumstances of the mistake to the authorities of Jane Lamb Memorial Hospital. Although Jane Lamb Memorial Hospital argues to the contrary, the Court finds that notification of the mistake was received before acceptance of the bid. The mere opening of the bids did not constitute the acceptance of the lowest bid. O. C. Kinney, Inc. v. Paul Hardeman, Inc., 151 Colo. 571, 379 P.2d 628 (1963). Likewise, the acceptance by the Board of Trustees on February 22, 1968, being conditional, was not effective. Peerless Casualty Co. v. Housing Authority, supra; Lexington Housing Authority v. Continental Cas. Co., 210 F.Supp. 732, 735 (W.D.Tenn. 1962). Furthermore, it is generally held that acceptance prior to notification does not bar the right to equitable relief from a mistake in the bid. See, e. g., James T. Taylor and Son, Inc. v. Arlington Ind. School Dist., supra; School Dist. of Scottsbluff v. Olson Const. Co., *supra*; Kutsche v. Ford, 222 Mich. 442, 192 N.W. 714 (1922); Annot., 52 A.L.R.2d 792, at 803 (1957).

The mistake in this case was an honest error made in good faith. While a mistake in and of itself indicates some degree of lack of care or negligence, under the circumstances here there was not such a lack of care as to bar relief. This was pointed out in State Bd. of Control v. Clutter Const. Corp., 139 So.2d 153, 156 (Fla.App.1962), as follows:

"The term 'negligence' or its equivalent, in this connection, generally means ordinary negligence, which will not necessarily bar granting equitable relief. Otherwise qualified, it generally means carelessness or lack of good faith in calculation which violates a positive duty in making up a bid so as to amount to gross negligence or wilful negligence, when it takes on a sinister meaning, and will furnish cause, if established, for holding a mistake of the offending bidder to be one not remedial in equity. It is thus distinguished from a clerical or inadvertent error in handling items of a bid, either through setting them down or in transcription."

The mistake here was a simple clerical error. To allow Jane Lamb Memorial Hospital to take advantage of this mistake would be unconscionable. This is especially true in light of the fact that they had actual knowledge of the mistake before the acceptance of the bid. Mount St. Mary's College v. Aetna Casualty & Surety, supra; Berkeley Unified School Dist. v. Barnes Const. Co., 123 F.Supp. 924 (N.D.Cal.1954); M. F. Kemper Const. Co. v. City of Los Angeles, supra. Nor can it be seriously contended that a $199,800 error, amounting to approximately 10% of the bid, does not relate directly to the substance of the consideration. Furthermore, Jane Lamb Memorial Hospital has suffered no actual damage by the withdrawal of the bid of M. J. McGough Company. The Hospital has lost only what it sought to gain by taking advantage of M. J. McGough Company's mistake. St. Nicholas Church v. Kropp, supra; Kutsche v. Ford, *supra*. Equitable considerations will not allow the recovery of the loss of bargain in this situation.

Under the facts before the Court, therefore, M. J. McGough Company will be allowed to rescind its bid and be relieved from any liability thereon. The Continental Insurance Company, surety on the bid bond, is likewise relieved from liability. See, e. g., Peerless Casualty Co. v. Housing Authority, *supra*; State

ex rel. Arkansas State Highway Commission v. Ottinger, 232 Ark. 35, 334 S.W.2d 694 (1960); see generally Annot., 52 A.L.R.2d 792, at 807 (1957.).

As a final matter, the Court notes that Jane Lamb Memorial Hospital relies heavily on the provisions on the bid which provides:

"The bidder agrees that this bid shall be good and may not be withdrawn for a period of 45 calendar days after the scheduled closing time for receiving bids."

It is also provided by Government regulations pursuant to the Hill-Burton Act, under which this project was to be financed, as follows:

"Withdrawal of Bids.—Bids may be withdrawn on written or telegraphic request received from bidders prior to the time fixed for opening. Negligence on the part of the bidder in preparing the bid confers no right for the withdrawal of the bid after it has been opened."

It is sufficient to say that provisions such as these have been considered many times in similar cases, and have never been held effective when equitable considerations dictate otherwise. Peerless Casualty Co. v. Housing Authority, *supra*; Mount St. Mary's College v. Aetna Casualty & Surety Co., *supra*; Lexington Housing Authority v. Continental Casualty Co., *supra*; Connecticut v. F. H. McGraw & Co., 41 F.Supp. 369 (D.Conn.1941); Elsinore Union Elementary School Dist. v. Kastorff, *supra*; M. F. Kemper Const. Co. v. City of Los Angeles, *supra*; Baltimore v. DeLuca-Davis Const. Co., *supra*.

Based on equitable principles, therefore, judgment will be entered in favor of M. J. McGough Company and against Jane Lamb Memorial Hospital. Due to the factual situation out of which this litigation arose and the reasons for which relief has been granted to M. J. McGough Company, the Court deems it to be in the best interests of justice that each party bear its own costs.

It is ordered that the bid submitted by M. J. McGough Company to Jane Lamb Memorial Hospital on February 16, 1968, be and is hereby declared rescinded. It is further declared hereby that no enforceable contract exists between M. J. McGough Company and Jane Lamb Memorial Hospital. The surety on the bid bond, The Continental Insurance Company, is hereby released from further liability thereon. Each party will bear its own costs.