The CITY OF DEVILS LAKE, a Municipal Corporation, Plaintiff,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Foreign Corporation, and Koehnlein, Lightowler, Johnson, Inc., a corporation, Defendants.

KOEHNLEIN, LIGHTOWLER, JOHNSON, INC., a corporation, Third Party Plaintiff,

v.

BARBAROSSA AND SONS, INCORPORATED, Third Party Defendant.

Civ. No. A78-2072.

United States District Court, D. North Dakota, Northeastern Division.

Sept. 30, 1980.

Lewis C. Jorgenson, Devils Lake, N. D., for plaintiff.

Robert Vaaler, Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, N. D., for St. Paul Fire & Marine and Barbarossa and Sons; James J. Ryan, George C. King, Thomas, King, Swenson & Collatz, P.A, St. Paul, Minn., of counsel.

Wickham Corwin, Charles Feste, Conmy, Feste & Bossart, Ltd., Fargo, N. D., for Koehnlein, Lightowler, Johnson, Inc.

## MEMORANDUM OF DECISION AND ORDER FOR JUDGMENT

BENSON, Chief Judge.

The above entitled diversity action, removed from state court, involves a dispute arising out of a contractor's bid on a storm and sanitary sewer separation project constructed in the City of Devils Lake, North Dakota. Plaintiff brought the action against defendant St. Paul Fire & Marine Insurance Company (hereinafter referred to as St. Paul) seeking forfeiture of a bid bond, and against Koehnlein, Lightowler, Johnson, Inc. (hereinafter referred to as Koehnlein), consulting engineer for the project. The two defendants asserted cross–claims against each other seeking contribution or indemnity. Koehnlein also impleaded Barbarossa and Sons (hereinafter referred to as Barbarossa), the bidding contractor secured by St. Paul's bond, seeking contribution or indemnity, alleging negligence in the preparation of its bid.

Trial was had to the court without a jury. At the close of plaintiff's case, the court granted a 41(b) motion of dismissal against plaintiff on its claim against Koehnlein on the grounds that upon the facts and the law, plaintiff had shown no right to relief. At the close of all the evidence, the court granted defendant St. Paul Fire and Marine Insurance Company's motion for a directed verdict of dismissal on plaintiff's claim against St. Paul. This memorandum and order is entered pursuant to the requirements of Rule 52(a).

## FINDINGS OF FACT

The sewer and water separation project which is the subject of this action was jointly funded by the City of Devils Lake and the federal government. It was constructed in two parts, Phases I and II and Phases III–VI. The bids on the first two phases had been let about a year before the bids on Phases III–VI, which is the portion of the construction project at issue here. Phases III–VI included as a material part of the project the installation of concrete drain pipe under U.S. Highway 2 and State Highway 19.

Koehnlein is an architectural and engineering firm located in Fargo and was the consulting engineer for the City for Phases I and II and a portion of Phases III–VI. It prepared the drawings and specifications for all phases of the project. Its employee, John Olson, supervised the preparation of the plans and specifications. At the time of construction, Olson was project engineer. At the time of trial, he was employed by plaintiff as its City Engineer.

In July 1978 the City advertised for bids to be submitted by July 31, 1978, for the construction of Phases III–VI. Copies of the plans and specifications were provided to interested contractors on request.

Barbarossa is a family owned construction company located in Long Lake, Minnesota, specializing and experienced in installing underground utilities. It was a relatively small contractor that had an annual net profit of $175,000.00 in 1978. It requested and received a copy of the drawings and specifications on Phases III–VI. Paul Flykt, chief estimator for Barbarossa, examined the drawings and specifications and also inspected the site.

Section 1, paragraph 1.5(c) of the technical specifications provided:

*Railroad and Highway Crossings* – Shall be measured for payment by the lineal foot of crossing installed. The respective size and class of pipe used will be paid for on a per foot basis; therefore, this item shall include the extra costs, i. e. jacking pits, railroad insurance, highway signing required by the Highway Department, attributed to railroad or highway crossings.

Koehnlein intended this specification to require that the concrete pipe be "jacked" under the highway, and prior to the bid opening had made an application to the state highway department for a crossing permit utilizing the jacking method. The jacking method utilized special equipment which pushed the pipe under the roadway without disturbing the surface.

The "open cut" method involved laying the pipe in an excavated trench cut across the roadway. After the pipe was laid, the trench was filled and the roadway resurfaced at the point of the cut. The cost of an open cut crossing was substantially less than a jacked crossing. The difference in the cost on plaintiff's project Phases III–VI was $112,000.00.

Five contractors, including Barbarossa, bid the project. The bids were opened on July 31, 1978. Barbarossa submitted a bid of $2,411,793.50, which was accompanied by a 5% bid bond as required by N.D.C.C. § 40–22–20. St. Paul was surety on the Bond. The Barbarossa bid was the low bid. The second lowest bid was submitted by George E. Haggart, Inc. Its bid was in the amount of $2,943,552.80.

Barbarossa had interpreted the specifications to call for open cut crossings, and had bid the crossings at $46,000.00. Haggart had bid the crossings at $155,940.00. At the time of the bid opening there was no mention of the method of crossing, but the next day Barbarossa's chief estimator, Paul

Flykt, through a conversation with a representative of another bidder, learned that plaintiff intended the contract to require that the crossings be constructed by utilizing the jacking method.

Barbarossa had also bid Phases I and II of the project and its representative had attended the bid opening. On Phases I and II, road crossings were constructed by utilizing the open cut method. Conditions would have been more favorable for an open cut method of crossings on Phases III–VI than they were on Phase I and II. Class 2 pipe was specified on Phases III–VI, and Barbarossa's experience had been that where jacking was to be utilized pipe much heavier than Class 2 had always been specified. Further, it was Barbarossa's experience that where jacking was required, the invitation for bids customarily carried jacking as a separate bid item. Barbarossa knew that the railroad never permitted a crossing of its line except through the use of the jacking method and attributed the reference to jacking in the specifications as relating only to railroad crossings.

Barbarossa had contemplated a $75,000.00 profit. If forced to enter into the contract on the basis of its bid it would have been commencing construction with the knowledge that it was starting a project on which there would be an estimated loss in excess of $40,000.00. It immediately notified plaintiff of its mistake and requested that if awarded the contract it be permitted to proceed on the basis of open cut construction, or on some other basis that would compensate it for the additional cost of jacking.

Plaintiff awarded the contract to Barbarossa and demanded that it proceed on the basis of its bid. Barbarossa refused. The contract was then awarded to the second lowest bidder, George E. Haggart, Inc. on its bid. Plaintiff then commenced this action to recover the amount of Barbarossa's 5% bid bond.

The court finds that Barbarossa used reasonable care in the preparation of its bid, and concludes that its bid on the assumption that the specifications called for open cut highway crossings was a unilateral mistake of such consequence that enforcement would be unconscionable.

## RATIONALE

North Dakota Century Code § 40–22–20 provides in part as follows:

. . . If any bidder to whom a contract is awarded fails or refuses to enter into such contract when requested to do so, the bond accompanying his bid shall be retained by the municipality as liquidated damages for such failure.

There appears to be no North Dakota case law on the issue, but it is generally accepted in other jurisdictions that a contractor may be relieved from a unilateral mistake under proper circumstances. See *M. J. McGough Company v. Jane Lamb Memorial Hospital*, 302 F.Supp. 482, 485 (S.D.Iowa 1969) and cases cited therein. See also *Town of LaConner v. American Construction Co., Inc.*, 21 Wash.App. 336, 585 P.2d 162 (1978). See generally, 64 Am. Jur.2d *Public Works and Contracts*, § 84 (1972).

■ This court is of the opinion that the North Dakota Supreme Court, if called upon to decide the issue, would adopt the general rule. In the disposition of the instant case, this court will be guided by the decision in *Jane Lamb Memorial Hospital, supra,* where the court at 485 stated:[1]

The prerequisites for obtaining such relief are: (1) the mistake is of such consequence that enforcement would be unconscionable; (2) the mistake must relate to the substance of the consideration; (3) the mistake must have occurred regardless of the exercise of ordinary care; (4) it must be possible to place the other party in status quo. . . . It is also generally required that the bidder give prompt notification of the mistake and his intention to withdraw.

Defendant has met all the prerequisites for obtaining relief.

---

1. Opinion by Roy L. Stephenson, now a judge of the Court of Appeals, Eighth Circuit.

By reason of its unilateral mistake, Barbarossa underbid the project by approximately $112,000.00. This would have placed it in a substantial loss position from the inception of the contract. The mistake was brought to plaintiff's attention within two days of the bid opening, and Barbarossa offered to construct the project if plaintiff would increase the contract amount by $112,000.00. Such an increase would have given the plaintiff its project for an amount $400,000.00 less than the Haggart bid. Instead, plaintiff awarded the contract to Haggart on its bid, and sued on Barbarossa's bid bond. It thereby increased its total cost by $400,000.00, from which it could have expected a maximum recovery on the bid bond of only $121,000.00. Under these circumstances the position of the City was unconscionable.

The crossing of a federal and a state highway was an integral part of the project. It was, therefore, a material feature of the contract which related to the substance of the consideration.

Barbarossa exercised ordinary care and that care did not prevent the mistake. Barbarossa was misled by a specification that did not clearly distinguish between highway and railroad crossings. Barbarossa reasonably concluded on the basis of the information available to it that the crossings on Phases III–VI of the total construction project would be the same as on Phases I and II constructed a year earlier. There was nothing in the plans and specifications which alerted it to the possibility that jacking was required.[2]

Plaintiff for some reason not entirely clear to the court elected to award the contract to Haggart. If it had allowed Barbarossa to modify its bid, all of the parties would have been placed in a status quo. Plaintiff would have had its project constructed at a reasonable cost with a substantial saving to it, and Barbarossa would have been in the position it intended when it bid the project.[3]

In *Kutsche v. Ford et al.*, 222 Mich. 442, 192 N.W. 714 (1923), the Michigan court, quoting from *Barlow v. Jones et al.*, 87 A. 649 (N.J.Ch.), stated as follows in addressing a similar issue:

"In the instant case it may be thought that the school district cannot be said to be placed in statu quo when it is considered that the building cost nearly $6,000 more than plaintiff's bid. To place in statu quo does not mean that one shall profit out of the mistake of another. It does not appear that plaintiff's mistake has made the school building cost more than it otherwise would have cost. The school district, if placed back where it was before the bid, loses nothing except what it seeks to gain out of plaintiff's mistake. To compel plaintiff to forfeit his deposit, because of his mistake, would permit the school district to lessen the proper cost of the school building at the expense of plaintiff, and that, in equity, is no reason at all for refusing plaintiff relief."

192 N.W. at 717.

Defendants are entitled to a dismissal of plaintiff's claim and the cross–claims and third party complaint are rendered moot.

IT IS ORDERED that judgment be entered dismissing plaintiff's complaint and cause of action against each of the defendants.

2. From an examination of the bid tabulation, one could infer that all the other bidders correctly interpreted the specifications to require jacking. But there was also evidence that Barbarossa may have been the only bidder which did its own jacking. It appears that at least some of the other bidders had been informed by a major jacking subcontractor that the City was going to require jacking.

3. Plaintiff has relied upon N.D.Cent.Code § 48–02·02 to support its theory that it was without authority to conduct private negotiations with Barbarossa. A reading of that statute, however, indicates that it may apply only to *buildings* and improvements connected therewith. *See Northern Improvement Company v. State*, 213 N.W.2d 885 (N.D.1973) (statute applied to sewer project connected with State Industrial School). Therefore, it is not clear that the statute would bar private negotiations in a contract of the type here. Also plaintiff had the clear legal authority to reject all bids and rebid the project.